| | |
|---|---|
| DISTRICT COURT, COUNTY OF PITKIN, STATE OF COLORADO<br>Address: 506 E. Main<br>Aspen, Colorado 81611<br>Tel: (970) 925-7635 | DATE FILED: March 16, 2021 6:17 PM<br>FILING ID: 787FB1EE81135<br>CASE NUMBER: 2021CV30021 |
| **Plaintiffs:** THE AARON H. FLECK REVOCABLE TRUST, through its Trustees, AARON H. FLECK; BARBARA G. FLECK, and THE BARBARA G. FLECK REVOCABLE TRUST, through its Trustees, AARON H. FLECK and BARBARA G. FLECK; AARON FLECK, individually and BARBARA FLECK, individually on behalf of themselves and all others similarly situated<br><br>v.<br><br>**Defendants:** FIRST WESTERN TRUST BANK, a Colorado banking corporation, CHARLES BANTIS, and ANDREW GODFREY. | ▲ COURT USE ONLY ▲<br><br>Case No.:<br><br>Div.: |
| *Attorneys for Plaintiffs*<br>Richard B. Podoll, Atty. Reg. #8775<br>Robert A. Kitsmiller, Atty. Reg. #16927<br>Jacqueline E. Hill, Atty. Reg. #47789<br>Taylor V. Carrillo, Atty. Reg. #53950<br>PODOLL & PODOLL, P.C.<br>5619 DTC Parkway, Suite 1100<br>Greenwood Village, Colorado 80111<br>Tel: (303) 861-4000<br>Fax: (303) 861-4004<br>rich@podoll.net<br>bob@podoll.net<br>jacqui@podoll.net<br>taylor@podoll.net | |

### COMPLAINT, CLASS ACTION COMPLAINT, AND JURY DEMAND

The Plaintiffs, the Aaron H. Fleck Revocable Trust, through its trustees, Aaron H. Fleck and Barbara G. Fleck, and the Barbara G. Fleck Revocable Trust, through its trustees, Aaron H. Fleck and Barbara G. Fleck on behalf of themselves and all others similarly situated, by and through their attorneys, Podoll & Podoll, P.C., and as for their Complaint, Class Action Complaint

Ex. 1

and Jury Demand against First Western Trust Bank, Charles Bantis, and Andrew Godfrey, state and allege as follows:

## INTRODUCTION AND BACKGROUND

1. This lawsuit concerns Defendants' breaches of fiduciary duties in failing to harvest losses in portfolios managed by Defendants.

2. It turns out that despite the very common tax benefit of offsetting gains by losses in a tax year, Defendants, who are professional investment advisors, money managers, and fiduciaries, had no polices or procedures in place to harvest short-term losses at the end of a tax year.

3. As a result of Defendants' beaches of fiduciary duties, gross negligence, and willful conduct, customers and beneficiaries of portfolios managed by Defendants, lost the opportunity to offset capital gains by losses on their tax returns.

4. Plaintiffs have suffered losses by the oversight, breaches of fiduciary duties and, mismanagement of portfolio accounts where losses existed.

5. On behalf of themselves and the proposed class, Plaintiffs seek damages in the form of the tax benefit that could have been realized had Defendant had proper policies and procedures for customers to harvest capital losses in their accounts held and managed by Defendants, as a Fiduciary.

6. Plaintiffs, on behalf of themselves, seek damages resulting from the Defendants' breaches of fiduciary duties in managing their accounts as fiduciaries.

7. Plaintiffs also assert that they were fraudulently induced to entrust the management of their investment accounts to FWTB, and that FWTB concealed material information from them towards the end of securing the management of their accounts.

## PARTIES AND VENUE

8. Plaintiff, the Aaron H. Fleck Revocable Trust ("Aaron Fleck Trust"), is a revocable trust with an address in Colorado at 1481 Sierra Vista Drive, Aspen, Colorado 81611.

9. The Trustees of the Aaron Fleck Trust, Aaron H. Fleck and Barbara G. Fleck (collectively the "Flecks") reside at the same address. (The Flecks are also identified herein individually as "Plaintiffs".)

10. Plaintiff, the Barbara G. Fleck Revocable Trust ("Barbara Fleck Trust"), is a revocable trust with an address in Colorado at 1481 Sierra Vista Drive, Aspen, Colorado 81611.

11.     The Trustees of the Barbara Fleck Trust, Aaron H. Fleck and Barbara G. Fleck, reside at the same address.

12.     Sometimes, the Aaron Fleck Trust and the Barbara Fleck Trust are collectively referred to as the "Trusts". The Trusts and the Flecks are sometimes referred to collectively as the "Plaintiffs".

13.     Defendant, First Western Trust Bank ("FWTB") is a Colorado banking corporation in good standing with the principal address in Colorado at 1900 16th Street, Suite 1200, Denver, Colorado 80202.

14.     Defendant Charles Bantis ("Bantis"), at all times relevant hereto, was the President of FWTB's Aspen branch.

15.     Defendant Andrew Godfrey ("Godfrey"), at all times relevant hereto, was a trust officer employed by FWTB's Aspen branch.

16.     Venue is proper in Pitkin County pursuant to Rule 98, C.R.C.P., because the transactions at issue herein were initiated by FWTB's Aspen office, in Pitkin County, Colorado.

**GENERAL ALLEGATIONS**

17.     All prior allegations of the Complaint are incorporated herein by this reference.

18.     In December 2017, the Flecks secured a bridge loan from FWTB for a new primary residence as they pursued the sale of their then current residence. The Flecks were pleased and appreciative of the help that FWTB provided to them with regard to the bridge loan.

19.     In May 2018, the Flecks, based upon their prior positive interaction with FWTB, agreed to allow FWTB to manage the Trusts. The total amount to be managed by FWTB in the Trusts was $8 million.

20.     Prior to entrusting their accounts to FWTB, Plaintiffs were assured by FWTB Bantis and Godfrey, that FWTB employed professional money managers.

21.     This representation was false and misleading.

22.     Had Plaintiffs been aware that their fiduciary amounts would be managed by person who were not registered investment advisors and were not professional money managers, they would not have placed their accounts with FWTB.

23.     In establishing the accounts with FWTB it was agreed that the level of income to be generated from the $8 million was between $400,000 to $500,000, with an anticipated overall return to be in the 6% range. Aaron Fleck ("Fleck") was 97 years old at the time.

24. Aaron Fleck had experience in the field of portfolio management and had been an investment broker for over 50 years. With that knowledge, he wanted to provide all discretion and fiduciary duty, and the management of the money given his advanced age, to FWTB.

25. The Flecks were well aware that the funds would be managed well beyond their lifetimes.

26. FWTB marketed itself as a registered investment advisor, trust company and private wealth institution, combined with strong attention to detail, strong commitment to fiduciary management and well-defined portfolio construction and team coverage for personal service. FWTB promotes itself as follows:

> At First Western Trust, we understand that much of building your wealth involves protecting your family, creating a lasting legacy, and ensuring the ability to live out the lifestyle you desire. Our experienced teams are discipline in all areas of wealth management, including wealth planning, trust and estates, investment management, private banking, risk management/insurance, and mortgage services. We have a team, not just one person, working for your benefit so that you gain access to the best financial planning minds in the business.

27. The representations in FWTB's promotional material and investment policy statement were also false and misleading.

28. Combined with the false oral representations, the Flecks were fraudulently induced to place their fiduciary accounts with FWTB.

29. In carrying out its services, FWTB represented that it was held to a fiduciary standard:

> At First Western Trust, our trust and wealth management teams are held to a fiduciary standard, which means that we are committed to ensuring that your wishes are carried out and that your loved ones are taken care of to the best of our ability.

30. In February 2018, FWTB and the Flecks, on behalf of the Trusts, entered into an Investment Policy Statement. The Investment Policy Statement purported to be a plan developed jointly by FWTB and The Flecks. The Investment Policy Statement provided that FWTB would:

> use this IPS in managing, monitoring and evaluating your investment assets. This IPS reflects the information you have provided about your present and future financial circumstances and your attitude, expectations and objectives in the investment of your

assets. It is provided to document the long-term adherence to an agreed upon investment program that would include various asset classes, styles, and acceptable ranges. In total, it is designed with the goal of producing a sufficient level of overall diversification and total investment return over the long term while controlling the overall risk of the portfolio. It is important that you and First Western review the provisions of this IPS on a regular basis because your personal circumstances may change overtime.

31. The Investment Policy Statement went on to describe in general terms the amount of the investment, the investment time horizon, which was 10 plus years, the cash flow objective which was $500,000 per year and a risk tolerance which provided "stable growth and low level of income; steady growth is expected."

32. The initial holding limits and ranges for the investments and asset allocations were as follows:

| Asset Class | Min% | Target% | Max% |
|---|---|---|---|
| US Large Cap Equities | 0% | 13% | 28% |
| US Mid Cap Equities | 0% | 4% | 14% |
| US Small Cap Equities | 0% | 6% | 16% |
| International Equities | 2% | 12% | 22% |
| Emerging Markets | 0% | 3% | 13% |
| High Yield Bonds | 0% | 4% | 14% |
| Fixed Income | 39% | 49% | 59% |
| Alternatives | 0% | 8% | 18% |
| Cash and Equivalents | 0% | 1% | 20% |

33. The Investment Policy Statement also provided:

On a no less than quarterly basis, you will receive a custodial statement detailing your portfolio holdings. Performance is calculated quarterly on both an absolute and relative basis as compared to appropriate benchmark indices. First Western will review your investment program with you periodically to determine the continued feasibility of achieving your investment objectives and the appropriateness of this IPS for achieving those objectives.

34. Although FWTB assured the Flecks both orally and in writing that there would be strong communications and concise statements in the management of their funds and periodic reviews, FWTB acted contrary to such representations. There was minimal client engagement. The statements that were provided were conflicting in terms of meeting the objectives of Aaron Fleck and Barbara Fleck. There was no clear path of investment strategy as a fiduciary provided by FWTB and there was no periodic review provided by the "team" at FWTB.

5

35. As a fiduciary, FWTB was required to represent the sole interests of its clients and to ensure that its clients fully understood how their trust would be managed and what kind of communication they could expect. In other words, FWTB was obligated to fully disclose what it was doing, particularly since FWTB was given such broad discretion in managing the Trusts' portfolio.

36. From the time the Flecks signed their Trust Agreements with FWTB, not a single representative of FWTB met with them to check on their understanding of the investment strategies, the investments that were made, or if the Flecks understood FWTB's statements.

37. During the time it acted on behalf of the Flecks, FWTB used more than one statement format. This resulted in confusion.

38. Over 12 months in serving as a fiduciary, FWTB reported that it had disbursed over $800,000 to the Flecks. The Flecks, however, received no distributions. This is yet another example of the gross negligence that permeated FWTB's handling of the Flecks' account.

39. Rather than managing the accounts to meet the needs of the Flecks and their Trusts, FWTB acted in a manner that benefitted itself.

40. There was no apparent investment strategy that was followed. Nevertheless, FWTB utilized the portfolio to engage in transactions resulting in management fees and mutual funds management fees. There was a significant level of transactions in the Trusts.

41. In 2019, there was a complete portfolio change over in the Trusts. The complete change over from funds, ETF's and other alternate investments to a compilation of individual securities for a good portion of the portfolio did not make sense, particularly given the Investment Policy Statement and the goals of the Flecks.

42. On December 2, 2018, Aaron Fleck realized there were major losses in both Trust portfolios in excess of $500,000. At that time, Aaron Fleck instructed FWTB to harvest the losses to offset other gains he had realized on other personal transactions. FWTB, Bantis, and Godfrey knew at the time that Fleck had capital gains in 2018 between $4 million to $5 million, from the sale of his home.

43. FWTB failed to harvest losses as instructed Aaron Fleck.

44. In fact, FWTB, in breach of its fiduciary duties, had no policy in place to address the harvesting of losses and no policy or procedure to contact customers regarding how to handle losses for customers, including Plaintiffs and others similarly situated.

45. Meanwhile, for several years of past portfolio management for class members, losses that were or could have been available to such class members were ignored by FWTB resulting in damage to Plaintiffs and each class member.

46. In January 2019, FWTB acknowledged it had not followed Aaron Fleck's specific instructions and were at fault for not taking the losses for the tax year 2018 and allowed that it had instituted a new policy of harvesting short term capital losses, FWTB also acknowledged to Aaron Fleck that it had no policy or procedure to harvest capital losses in accounts it managed at the end of a tax year. Bantis, Godfrey, and two other bank officers admitted to Fleck that they had made a mistake by not taking short term losses.

47. Ironically, it was the gross negligence and mismanagement by FWTB in handling the Trusts in the first place that created the capital losses. To compound that problem, because FWTB did not harvest losses, the Flecks were unable to use those losses when filing their 2018 tax returns resulting in damages to the Trusts and to the Flecks.

48. As a registered investment advisor, FWTB is subject to Section 206 of the Advisor's Act, which makes it unlawful for an advisor to engage in fraudulent, deceptive or manipulative conduct. FWTB also violated the "know your customer rule."

49. That section also imposes a fiduciary duty on investment advisors by operation of law. The purpose is to eliminate conflicts of interest and to prevent an advisor from overreaching and taking unfair advantage of the client's trust. As a fiduciary, FWTB had without limitation the following general duties: duty of loyalty, duty of disclosure, duty to act with competence, and duty to avoid self-dealing.

50. FWTB failed to follow a coherent investment strategy and failed to adhere to the investment strategy discussed and agreed to at the outset of FWTB's relationship with the Flecks.

51. FWB failed to follow clear and direct instructions to harvest losses in 2018 so they could be used against capital gains in that same year.

52. In recognition of its willful and grossly negligent failure to have proper procedures and safeguards in place to harvest losses, FWTB subsequently created policies and procedures regarding harvest losses.

53. FWTB willfully made investment decisions that were manipulative, contrary to its fiduciary duties and designed and intended to generate and realize management fees that would not have been necessary and could not have been charged to the Trusts had they been managed properly by FWTB.

54. FWTB's conduct was willful and grossly negligent resulting in damages to the Trusts, the individual Plaintiffs and others similarly situated.

55. FWTB's conduct was also in bad faith breached its fiduciary duties and did not meet the reasonable expectations of Plaintiffs and others similarly situated.

56. The Flecks' damages include, without limitation, damages from failure to harvest short term losses, losses in their investment accounts due to FWTB's breaches of fiduciary duties, and attorney fees incurred in asserting their claims against FWTB.

57. The Flecks are also entitled to disgorgement of all fees and charges received by FWTB.

**FIRST CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(Plaintiffs' Individual and Class Action Claim Against Defendant FWTB)**

58. Pursuant to C.R.C.P. 23(a) and (b), Plaintiffs bring this action on their own behalf and on behalf of the proposed class, of all similarly situated persons nationwide consisting of all persons who had accounts or portfolios consisting of assets managed by FWTB.

59. Excluded from the class are: (a) any entity in which Defendant has a controlling interest, to include but not limited to, legal representatives, heirs and successors; (b) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (c) and judicial officer in the lawsuit and/or persons within third degree of consanguinity to such Judge.

60. Upon information and belief, the class consists of more than one hundred participants. Accordingly, it would be impractical to join all class members before the Court.

61. Common questions of law and fact exist as to all members of the proposed class and predominate over questions affecting only individual class members. These common questions of law and fact will be shown through common evidence include:

   a. Whether FWTB breached its fiduciary duties to Plaintiffs and class members by having no policy to address harvesting of capital losses;

   b. Whether FWTB knew or should have known that losses would occur in accounts it was managing and that such losses could be harvested and used to offset gains in the same tax year; and

   c. Whether FWTB acted in a grossly negligent manner and willful manner failing to have any policies or procedures in place to harvest losses occurring in Plaintiffs' and class members' accounts.

62. The claims of Plaintiffs are typical of the claims of class members, in that they share the above-referenced common facts and legal claims, there is a sufficient relationship between the damage to Plaintiffs and Defendants' conduct affecting class members, and Plaintiffs have no interest adverse to the interests of other class members.

8

63.     Plaintiffs will fairly and adequately protect the interests of class members and have retained counsel experienced and competent in the prosecution of complex class actions.

64.     FWTB has acted or refused to act on grounds generally applicable to the class.

65.     The questions of law and fact, to the members of the class predominate over any questions affecting only individual members, if any.

66.     Defendants' breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing and gross negligence will be shown through common evidence.

67.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because: (i) there has been no interest shown of members of the class in individually controlling the prosecution of separate actions; (ii) Plaintiffs are aware of no other litigation concerning the controversy already commenced on behalf of the members of the class; (iii) it is desirable to concentrate the litigation in this form, which is familiar to both Plaintiffs and Defendants; and (iv) there are no difficulties likely to be encountered in the management of this class action.

WHEREFORE, Plaintiffs pray for judgment in their favor of the class defined herein, on their First Claim for Relief in an amount to be determined at trial against Defendants, together with costs, expert witness fees, prejudgment interest, and such other and further relief as this Court may deem proper.

## SECOND CLAIM FOR RELIEF
### Fraudulent Inducement
**(Plaintiffs' Individual Claim Against Defendants FWTB, Bantis, and Godfrey)**

68.     All allegations of the Complaint are incorporated herein by this reference.

69.     FWTB, Bantis, and Godfrey conveyed false information to Plaintiffs in regard to their qualifications, approach and procedures for managing their fiduciary amounts.

70.     FWTB, Bantis, and Godfrey intended for Plaintiffs to rely upon the false information in entrusting their fiduciary accounts to FWTB.

71.     The misrepresentations made to Plaintiffs were material.

72.     Plaintiffs reasonably relied on the false information provided by FWTB, Bantis, and Godfrey, orally and in writing, in entrusting their fiduciary accounts to FWTB.

73.     Had Plaintiffs been aware of the true facts that their accounts would not be managed by RIA's and professional money managers, and the management of their accounts would be done

in a haphazard manner without a coherent investment strategy, they would not have entrusted their fiduciary accounts to FWTB.

74. Plaintiffs justifiably relied on FWTB's, Bantis's, and Godfrey's misrepresentations.

75. As a result of their justifiable reliance, Plaintiffs sustained damages representing the difference between the performance of their accounts and the return they would have received, had their accounts been managed by competent RIA's and professional money managers, as well as paying FWTB excess fees. Plaintiffs have also sustained damages in the attorney fees they must incur in bringing this lawsuit.

WHEREFORE, Plaintiffs pray for judgment in their favor on their Second Claim for Relief in an amount to be determined at trial against Defendants FWTB, Bantis, and Godfrey, together with costs, expert witness fees, pre- and post-judgment interest, and for such other and further relief as this Court may deem just.

### THIRD CLAIM FOR RELIEF
### Fraudulent Concealment/Non-Disclosure
### (Plaintiffs' Individual Claim Against Defendants FWTB, Bantis, and Godfrey)

76. All allegations of the Complaint are incorporated herein by this reference.

77. FWTB were retained to manage accounts as fiduciary.

78. Based upon the fiduciary relationship in which FWTB induced the Flecks to enter, FWTB, Bantis, and Godfrey had a duty to disclose material facts relating to their credentials and approach to the management of Plaintiffs' fiduciary accounts.

79. FWTB, Bantis, and Godfrey failed to disclose the material facts that Plaintiffs' fiduciary accounts would not be managed by registered investment advisors or professional money managers and that FWTB would not pursue a cohesive considered approach in managing the Flecks' accounts.

80. These facts were concealed with the intention of creating a false impression of the actual facts in the Flecks' minds.

81. Plaintiffs' decision to place their fiduciary accounts with FWTB was based upon their belief that FWTB's money managers were RIA's, and credentialed professional money managers who would employ a cohesive and considered strategy to the management of Plaintiffs' accounts, considering their age and investment objectives.

82. The true facts were that FWTB's personnel who managed the Flecks' accounts were neither RIA's, nor professional money managers, they had no cohesive investment strategy, and the investments they made had no rhyme or reason.

83. Plaintiffs entrusted their fiduciary accounts to FWTB, justifiably relying on the assumption that their accounts would be managed by professional money managers employing a cohesive investment strategy.

84. Had Plaintiffs been aware of the true facts, they would not have employed FWTB to manage their fiduciary accounts.

85. Plaintiffs' reliance on the belief that FWTB employed credentialed money mangers who would properly manage their fiduciary accounts was justifiable.

86. Plaintiffs sustained damage because of their justifiable reliance that the concealed facts were not different from what they reasonably believed the true facts to be.

87. Further, as Plaintiffs are a Trust, they are entitled to recover their attorney fees, in this action to preserve the corpus of the Trust.

WHEREFORE, Plaintiffs pray for judgment in their favor on their Third Claim for Relief in an amount to be determined at trial against Defendants FWTB, Bantis, and Godfrey, together with costs, expert witness fees, pre- and post-judgment interest, and such other and further relief as this Court may deem just.

### FOURTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (Plaintiffs' Individual Claim Against FWTB)

88. All prior allegations of the Complaint are incorporated herein by this reference.

89. FWTB undertook to act as a fiduciary in managing over $8 million in assets for and on behalf of Plaintiffs.

90. FWTB breached its fiduciary duties as alleged herein by, among other things, failing to communicate with Plaintiffs, failing to provide periodic reviews, failing to pursue a cohesive investment strategy, initiating transactions to generate management fees where a reasonably prudent fiduciary would not do, failing to follow the instructions of the Flecks regarding harvesting losses, and failing to have policies or procedures in place to allow for the harvesting of losses.

91. FWTB's actions, which constituted a breach of its fiduciary duties, involved willful misconduct, and gross negligence in the management of their fiduciary accounts.

92. As a direct and proximate result of FWTB's breaches of fiduciary duty, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment in their favor on their Fourth Claim for Relief in an amount to be determined at trial against Defendant FWTB together with costs, expert witness fees, pre- and post-judgment interest, and such other and further relief as this Court may deem just.

**FIFTH CLAIM FOR RELIEF**
**Breach of Contract**
**(Plaintiffs' Individual Claim Against FWTB)**

93. All prior allegations of the Complaint are incorporated herein by this reference.

94. The Trusts entered into a contractual relationship with FWTB.

95. The contract for each Trust was in the form of: (1) an Investment Policy Statement; (2) Fee Schedule Agreement; (3) Investment Services and Custody Agreement; and (4) a New Account Information Form.

96. The contract between FWTB and the Trusts gave FWTB full discretion, including that of "attorney-in-fact" to act for the Trustees in carrying out their obligations.

97. The contracts also gave discretion to FWTB to pay itself for management fees and expenses.

98. The contracts provided that the securities in the Trusts which were in the custody of FWTB would be treated with "the same degree and protection which [FWTB] gives its own property."

99. The contracts between FWTB, the Trusts imposed fiduciary obligations on FWTB.

100. The Trusts expected that they would be managed by professional money manager with a cohesive investment strategy, consistent with fiduciary standards of prudence, full disclosure, and avoidance of conflicts of interest, competence, diligence, good faith and due care.

101. In failing to provide review services as indicated in its contracts, FWTB failed to comply with its minimal contractual and fiduciary obligations.

102. Transactions in the Trust accounts were designed to and did generate management fees one would not reasonably expect in the prudent management of trust assets, and beyond those one would expect in handling its own property. Such conduct was also in violation of FWTB's fiduciary and contractual duties.

103. FWTB breached its contract with the Trusts by failing to comply with its fiduciary obligations, including, but not limited to, willfully making unnecessary transactions in order to create management fees, ignoring specific instructions from the Trusts and their trustees regarding harvesting losses, and failing to have a policy in place to harvest losses for each class member, and failing to fully inform Plaintiffs of their conduct, failing to review investments with Plaintiffs, and failing to productively invest Plaintiffs' money.

104. FWTB was able to engage in the contract alleged herein because it had been given total discretion to manage the Trusts.

105. FWTB breached its duties of good faith and fair dealing by undermining the reasonable expectations of the Flecks and the Trusts.

106. FWTB's actions, which constituted a breach and bad faith breach of its contractual obligations, involved willful misconduct.

107. As a direct and proximate result of FWTB's breaches of contract as alleged herein, the Trusts have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment in their favor on their Fifth Claim for Relief in an amount to be determined at trial against Defendant FWTB together with costs, expert witness fees, pre- and post-judgment interest, and such other and further relief as this Court may deem just.

**JURY DEMAND** Plaintiffs demand a jury of six for all claims triable to a Jury.

Respectfully submitted this 16th day of March 2021.

PODOLL & PODOLL, P.C.

By: *s/Richard B. Podoll*
Richard B. Podoll
5619 DTC Pkwy, Ste. 1100
Greenwood Village, CO 80111
(303) 861-4000

**Address of Plaintiffs:**
1481 Sierra Vista Drive
Aspen, Colorado 81611