# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01073-CMA-CPG

THE AARON H. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck and Barbara G. Fleck,
THE BARBARA G. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck and Barbara G. Fleck,
AARON FLECK, and BARBARA G. FLECK, on behalf of themselves and all others similarly situated,

    Plaintiffs,

    v.

FIRST WESTERN TRUST BANK,
CHARLES BANTIS, and
ANDREW GODFREY,

    Defendants.

## FIRST AMENDED COMPLAINT

The Plaintiffs, the Aaron H. Fleck Revocable Trust, through its trustees, Aaron H. Fleck and Barbara G. Fleck, and the Barbara G. Fleck Revocable Trust, through its trustees, Aaron H. Fleck and Barbara G. Fleck on behalf of themselves and all others similarly situated, by and through their attorneys, Podoll & Podoll, P.C., and as for their First Amended Complaint, Class Action Complaint and Jury Demand against First Western Trust Bank, Charles Bantis, and Andrew Godfrey, state and allege as follows:

## INTRODUCTION AND BACKGROUND

1. This lawsuit concerns Defendants' breaches of fiduciary duties in failing to harvest losses in portfolios managed by Defendants.

2. It turns out that despite the very common tax benefit of offsetting gains by losses in a tax year, Defendants, who held themselves out as professional investment advisors, money managers, and fiduciaries, had no polices or procedures in place to harvest short-term losses at the end of a tax year.

3. As a result of Defendants' beaches of fiduciary duties, gross negligence, and willful conduct, customers and beneficiaries of portfolios managed by Defendants, lost the opportunity to offset capital gains by losses on their tax returns.

4. Plaintiffs have suffered losses by the oversight, breaches of fiduciary duties and, mismanagement of portfolio accounts where losses existed.

5. On behalf of themselves and the proposed class, Plaintiffs seek damages in the form of the tax benefit that could have been realized had Defendant had proper policies and procedures for customers to harvest capital losses in their accounts held and managed by Defendants, as a fiduciary.

6. Plaintiffs, on behalf of themselves, seek damages resulting from the Defendants' breaches of fiduciary duties in managing their accounts as fiduciaries.

7. Plaintiffs also assert that they were fraudulently induced to entrust the management of their investment accounts to FWTB, and that FWTB concealed material information from them towards the end of securing the management of their accounts.

## PARTIES AND VENUE

8. Plaintiff, the Aaron H. Fleck Revocable Trust ("Aaron Fleck Trust"), is a revocable trust with an address in Colorado at 1481 Sierra Vista Drive, Aspen, Colorado 81611.

9. The Trustees of the Aaron Fleck Trust, Aaron H. Fleck and Barbara G. Fleck (collectively the "Flecks") reside at the same address. (The Flecks are also identified herein individually as "Plaintiffs".)

10. Plaintiff, the Barbara G. Fleck Revocable Trust ("Barbara Fleck Trust"), is a revocable trust with an address in Colorado at 1481 Sierra Vista Drive, Aspen, Colorado 81611.

11. The Trustees of the Barbara Fleck Trust, Aaron H. Fleck and Barbara G. Fleck, reside at the same address.

12. Sometimes, the Aaron Fleck Trust and the Barbara Fleck Trust are collectively referred to as the "Trusts". The Trusts and the Flecks are sometimes referred to collectively as the "Plaintiffs".

13. Defendant, First Western Trust Bank ("FWTB") is a Colorado banking corporation in good standing with the principal address in Colorado at 1900 16th Street, Suite 1200, Denver, Colorado 80202.

14. Defendant Charles Bantis ("Bantis"), at all times relevant hereto, was the President of FWTB's Aspen branch.

15. Defendant Andrew Godfrey ("Godfrey"), at all times relevant hereto, was a trust officer employed by FWTB's Aspen branch.

16. The Class consists of all similarly situated persons and entities nationwide consisting of all persons and entities who had accounts or portfolios consisting of assets managed by FWTB.

17. Venue is proper in Pitkin County pursuant to Rule 98, C.R.C.P., because the transactions at issue herein were initiated by FWTB's Aspen office, in Pitkin County, Colorado.

**GENERAL ALLEGATIONS**

18. All prior allegations of the Complaint are incorporated herein by this reference.

19. In December 2017, the Flecks secured a bridge loan from FWTB for a new primary residence as they pursued the sale of their then current residence. The Flecks were pleased and appreciative of the help that FWTB provided to them with regard to the bridge loan.

20. In May 2018, the Flecks, based upon their prior positive interaction with FWTB, agreed to allow FWTB to manage the Trusts. The total amount to be managed by FWTB in the Trusts was $8 million.

21. Prior to entrusting their accounts to FWTB, Plaintiffs were assured by FWTB Bantis and Godfrey, that FWTB employed professional money managers.

22. This representation was false and misleading.

23. Had Plaintiffs been aware that their fiduciary amounts would be managed by person who were not registered investment advisors and were not professional money managers, they would not have placed their accounts with FWTB.

24. In establishing the accounts with FWTB it was agreed that the level of income to be generated from the $8 million was between $400,000 to $500,000, with an anticipated overall return to be in the 6% range. Aaron Fleck ("Fleck") was 97 years old at the time.

25. Aaron Fleck had experience in the field of portfolio management and had been an investment broker for over 50 years. With that knowledge, he wanted to provide all discretion and fiduciary duty, and the management of the money given his advanced age, to FWTB.

26. The Flecks were well aware that the funds would be managed well beyond their lifetimes.

27. FWTB marketed itself as a registered investment advisor, trust company and private wealth institution, combined with strong attention to detail, strong commitment to fiduciary management and well-defined portfolio construction and team coverage for personal service. FWTB promotes itself as follows:

> At First Western Trust, we understand that much of building your wealth involves protecting your family, creating a lasting legacy, and

ensuring the ability to live out the lifestyle you desire. Our experienced teams are discipline in all areas of wealth management, including wealth planning, trust and estates, investment management, private banking, risk management/insurance, and mortgage services. We have a team, not just one person, working for your benefit so that you gain access to the best financial planning minds in the business.

28. Regarding Trust Investment Management Services, FWTB markets its management as follows:

> In addition to designing your personal portfolio, our experienced trust investment management service teams can also serve as an ***investment advisor*** to your trusts. We are dedicated to supporting your beneficiaries and building an [sic] trust investment management plan that will help you leave a positive and lasting legacy. (***Emphasis added***).

29. The representations in FWTB's promotional material and investment policy statement were also false and misleading.

30. Combined with the false oral representations, the Flecks were fraudulently induced to place their fiduciary accounts with FWTB.

31. In carrying out its services, FWTB represented that it was held to a fiduciary standard:

> At First Western Trust, our trust and wealth management teams are held to a fiduciary standard, which means that we are committed to ensuring that your wishes are carried out and that your loved ones are taken care of to the best of our ability.

32. In May 2018, FWTB and the Flecks, on behalf of the Trusts, entered into an Investment Policy Statement. The Investment Policy Statement, originally drafted in February 2018, purported to be a plan developed jointly by FWTB and The Flecks. The Investment Policy Statement provided that FWTB would:

> use this IPS in managing, monitoring and evaluating your investment assets. This IPS reflects the information you have provided about your present and future financial circumstances and your attitude, expectations and objectives in the investment of your assets. It is provided to document the long-term adherence to an agreed upon investment program that would include various asset classes, styles, and acceptable ranges. In total, it is designed with the goal of producing a sufficient level of overall diversification and

4

total investment return over the long term while controlling the overall risk of the portfolio. It is important that you and First Western review the provisions of this IPS on a regular basis because your personal circumstances may change overtime.

33. The Investment Policy Statement went on to describe in general terms the amount of the investment, the investment time horizon, which was 10 plus years, the cash flow objective which was $500,000 per year and a risk tolerance which provided "stable growth and low level of income; steady growth is expected."

34. The initial holding limits and ranges for the investments and asset allocations were as follows:

| Asset Class | Min% | Target% | Max% |
| --- | --- | --- | --- |
| US Large Cap Equities | 0% | 13% | 28% |
| US Mid Cap Equities | 0% | 4% | 14% |
| US Small Cap Equities | 0% | 6% | 16% |
| International Equities | 2% | 12% | 22% |
| Emerging Markets | 0% | 3% | 13% |
| High Yield Bonds | 0% | 4% | 14% |
| Fixed Income | 39% | 49% | 59% |
| Alternatives | 0% | 8% | 18% |
| Cash and Equivalents | 0% | 1% | 20% |

35. The Investment Policy Statement also provided:

On a no less than quarterly basis, you will receive a custodial statement detailing your portfolio holdings. Performance is calculated quarterly on both an absolute and relative basis as compared to appropriate benchmark indices. First Western will review your investment program with you periodically to determine the continued feasibility of achieving your investment objectives and the appropriateness of this IPS for achieving those objectives.

36. Further in the Investment Services and Custody Agreement, FWTB stated it "shall provide Client with an investment policy statement outlining the Clients' investment strategies and goals."

37. Although FWTB assured the Flecks both orally and in writing that there would be strong communications and concise statements in the management of their funds and periodic reviews, FWTB acted contrary to such representations. There was minimal client engagement. The statements that were provided were conflicting in terms of meeting the objectives of Aaron Fleck and Barbara Fleck. There was no clear path of investment strategy as a fiduciary provided by FWTB and there was no periodic review provided by the "team" at FWTB. As a fiduciary, FWTB

5

was required to represent the sole interests of its clients and to ensure that its clients fully understood how their trust would be managed and what kind of communication they could expect. In other words, FWTB was obligated to fully disclose what it was doing, particularly since FWTB was given such broad discretion in managing the Trusts' portfolio.

38. From the time the Flecks signed their Trust Agreements with FWTB, not a single representative of FWTB met with them to check on their understanding of the investment strategies, the investments that were made, or if the Flecks understood FWTB's statements.

39. During the time it acted on behalf of the Flecks, FWTB used more than one statement format. This resulted in confusion.

40. Over 12 months in serving as a fiduciary, FWTB reported that it had disbursed over $800,000 to the Flecks. The Flecks, however, received no distributions. This is yet another example of the gross negligence that permeated FWTB's handling of the Flecks' account.

41. The only standard of care addressed in the controlling documents executed between the Plaintiffs and the Defendants is memorialized in the Investment Agreement. FWBT promised that the securities in the Trusts which were in the custody of FWTB would be treated with "the same degree and protection which [FWTB] gives its own property." The contract does not define what degree of protection FWTB gives to its own property or if FWTB would uphold industry standard duties of care in managing Plaintiffs' accounts such as, but not limited to, dealing in the best interest or sole interest of the clients.

42. The standard of care assumed by FWTB pursuant to the contract was vague and non-specific. The written contract did not address any common law duties and there is no other basis in the contractual documents to say that the common law duties had been subsumed, eliminated, or modified by the written contract between FWTB, Bantis, Godfrey and the Plaintiffs.

43. FWTB, Bantis, and Godfrey, acting as fiduciaries, were bound by the common law duties of loyalty, prudence, care, good faith, and avoidance of self-dealing in providing investment advisement services to Plaintiffs' accounts.

44. As a fiduciary, FWTB had without limitation the following general duties arising out of common law: duty of loyalty, duty to act with competence, and duty to avoid self-dealing.

45. Rather than managing the accounts to meet the needs of the Flecks and their Trusts, FWTB acted in a manner that benefitted itself.

46. There was no apparent investment strategy that was followed. Nevertheless, FWTB utilized the portfolio to engage in transactions resulting in management fees and mutual funds management fees. There was a significant level of transactions in the Trusts.

47. In 2019, there was a complete portfolio change over in the Trusts. The complete change over from funds, ETF's and other alternate investments to a compilation of individual

securities for a good portion of the portfolio did not make sense, particularly given the Investment Policy Statement and the goals of the Flecks.

48. On December 2, 2018, Aaron Fleck realized there were major losses in both Trust portfolios in excess of $500,000. At that time, Aaron Fleck instructed FWTB to harvest the losses to offset other gains he had realized on other personal transactions. FWTB, Bantis, and Godfrey knew at the time that Fleck had capital gains in 2018 between $4 million to $5 million, from the sale of his home.

49. FWTB failed to harvest losses as instructed Aaron Fleck.

50. In fact, FWTB, in breach of its fiduciary duties, had no policy in place to address the harvesting of losses and no policy or procedure to contact customers regarding how to handle losses for customers, including Plaintiffs and others similarly situated.

51. Meanwhile, for several years of past portfolio management for class members, losses that were or could have been available to such class members were ignored by FWTB resulting in damage to Plaintiffs and each class member.

52. In January 2019, FWTB acknowledged it had not followed Aaron Fleck's specific instructions and were at fault for not taking the losses for the tax year 2018 and allowed that it had instituted a new policy of harvesting short term capital losses, FWTB also acknowledged to Aaron Fleck that it had no policy or procedure to harvest capital losses in accounts it managed at the end of a tax year. Bantis, Godfrey, and two other bank officers admitted to Fleck that they had made a mistake by not taking short term losses.

53. Ironically, it was the gross negligence and mismanagement by FWTB in handling the Trusts in the first place that created the capital losses. To compound that problem, because FWTB did not harvest losses, the Flecks were unable to use those losses when filing their 2018 tax returns resulting in damages to the Trusts and to the Flecks.

54. "Investment adviser" means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities. C.R.S. § 11-51-201(9.5)(a)(I); *see also* 15 USCS § 80b-2, Investment Advisors Act (herein after "IAA").

55. "Investment adviser" includes financial planners or other persons who, as an integral component of other financially related services, provide investment advisory services to others for compensation and as a part of a business or who hold themselves out as providing investment advisory services to others for compensation. *Id*. at (9.5)(a)(II).Upon information and belief, FWTB does not meet the requirements for exclusion from the IAA under C.R.S. § 11-51-201(9.5)(a)(II).

56. As an investment advisor, FWTB is subject to both the IAA and C.R.S. 11-51-501, which makes it unlawful for an advisor to "[e]mploy any device, scheme, or artifice to defraud any client or prospective client" or to "engage in any transaction, practice, or course of business which operates as a fraud or deceit upon" any person. *See* 15 U.S.C.S. § 80b-6 (1) and (2); and C.R.S. § 11-51-501(a) and (c).

57. The federal and state Investment Advisor Acts also impose minimum standards on the behavior of investment advisors and imposes fiduciary duties upon investment advisors by operation of law. The purpose is to eliminate conflicts of interest and to prevent an advisor from overreaching and taking unfair advantage of the client's trust.

58. FWTB failed to follow a coherent investment strategy and failed to adhere to the investment strategy discussed and agreed to at the outset of FWTB's relationship with the Flecks.

59. FWB failed to follow clear and direct instructions to harvest losses in 2018 so they could be used against capital gains in that same year.

60. In recognition of its willful and grossly negligent failure to have proper procedures and safeguards in place to harvest losses, FWTB subsequently created policies and procedures regarding harvest losses.

61. FWTB willfully made investment decisions that were manipulative, contrary to its fiduciary duties and designed and intended to generate and realize management fees that would not have been necessary and could not have been charged to the Trusts had they been managed properly by FWTB.

62. FWTB's conduct was willful and grossly negligent resulting in damages to the Trusts, the individual Plaintiffs and others similarly situated.

63. FWTB's conduct was also in bad faith breached its fiduciary duties and did not meet the reasonable expectations of Plaintiffs and others similarly situated.

64. The Flecks' damages include, without limitation, damages from failure to harvest short term losses, losses in their investment accounts due to FWTB's breaches of fiduciary duties, and attorney fees incurred in asserting their claims against FWTB.

65. The Flecks are also entitled to disgorgement of all fees and charges received by FWTB.

## FIRST CLAIM FOR RELIEF
**Breach of Fiduciary Duty**
**(Plaintiffs' Individual and Class Action Claim Against Defendant FWTB)**

66. All prior allegations of the Complaint are incorporated herein by this reference.

67. Pursuant to C.R.C.P. 23(a) and (b), Plaintiffs bring this action on their own behalf and on behalf of the proposed class, of all similarly situated persons and entities nationwide consisting of all persons and entities who had accounts or portfolios consisting of assets managed by FWTB.

68. Excluded from the class are: (a) any entity in which Defendant has a controlling interest, to include but not limited to, legal representatives, heirs and successors; (b) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (c) and judicial officer in the lawsuit and/or persons within third degree of consanguinity to such Judge.

69. Upon information and belief, the class consists of more than one hundred participants. Accordingly, it would be impractical to join all class members before the Court.

70. Common questions of law and fact exist as to all members of the proposed class and predominate over questions affecting only individual class members. These common questions of law and fact will be shown through common evidence include:

   a. Whether FWTB breached its fiduciary duties to Plaintiffs and class members by having no policy to address harvesting of capital losses;

   b. Whether FWTB knew or should have known that losses would occur in accounts it was managing and that such losses could be harvested and used to offset gains in the same tax year; and

   c. Whether FWTB acted in a grossly negligent manner and willful manner failing to have any policies or procedures in place to harvest losses occurring in Plaintiffs' and class members' accounts.

71. The claims of Plaintiffs are typical of the claims of class members, in that they share the above-referenced common facts and legal claims, there is a sufficient relationship between the damage to Plaintiffs and Defendants' conduct affecting class members, and Plaintiffs have no interest adverse to the interests of other class members.

72. Plaintiffs will fairly and adequately protect the interests of class members and have retained counsel experienced and competent in the prosecution of complex class actions.

73. FWTB has acted or refused to act on grounds generally applicable to the class.

74. The questions of law and fact, to the members of the class predominate over any questions affecting only individual members, if any.

75. Defendants' breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing and gross negligence will be shown through common evidence.

76. A class action is superior to other methods for the fair and efficient adjudication of this controversy because: (i) there has been no interest shown of members of the class in individually controlling the prosecution of separate actions; (ii) Plaintiffs are aware of no other litigation concerning the controversy already commenced on behalf of the members of the class; (iii) it is desirable to concentrate the litigation in this form, which is familiar to both Plaintiffs and Defendants; and (iv) there are no difficulties likely to be encountered in the management of this class action. The fiduciary duties undertaken by FWBT arise from its services as an investment advisor and asset manager and are not related or defined by the Investment Agreement which merely promised to treat Plaintiffs' Property with the same general undefined protection that it employs for its property but did not incorporate fiduciary duties.

77. FWTB undertook to act as a fiduciary and did so act in managing the assets of the class members.

78. FWTB held itself out as an investment advisor, including to members of the class, to provide experienced trust investment management services.

79. FWTB held itself out as a fiduciary to its investors, including class members, and advertised that its services in trust and wealth management teams "are held to a fiduciary standard."

80. FWTB was bound by fiduciary duties to the class members including, and without limitation, the duty of loyalty, duty to act with competence, good faith, and duty to avoid self-dealing.

81. FWTB breached its fiduciary obligations as alleged herein by failing to have policies or procedures in place to harvest losses at the end of a tax year, and by failing to harvest losses at the end of a tax year.

82. FWTB's contracts did not and could not have subsumed FWTB's fiduciary duties to the class members regarding harvesting losses because FWTB had no policies, procedures, or practices of harvesting losses to protect the class members.

83. FWTB's actions, which constituted a breach of its fiduciary duties, involved willful misconduct and gross negligence.

84. As a direct and proximate result of FWTB's breaches of fiduciary duty, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment in their favor of the class defined herein, on their First Claim for Relief in an amount to be determined at trial against Defendants, together with costs, expert witness fees, prejudgment interest, and such other and further relief as this Court may deem proper.

## SECOND CLAIM FOR RELIEF
### Fraudulent Inducement
### (Plaintiffs' Individual Claim Against Defendants FWTB, Bantis, and Godfrey)

85. All allegations of the Complaint are incorporated herein by this reference.

86. Between and including February 2018 to May 2018, FWTB, Bantis, and Godfrey conveyed false information to Plaintiffs in regard to their qualifications, approach, and procedures for managing their fiduciary accounts.

87. FWTB advertised that its trust investment management service teams could also serve as an investment advisor for trust accounts, including Plaintiffs' accounts.

88. FWTB, Bantis, and Godfrey engaged in a practice, or course of business which operated as a fraud or deceit upon" the Plaintiffs by misrepresenting that the accounts would be managed by both Registered Investment Advisors or professional money managers.

89. FWTB, Bantis, and Godfrey knew at the time the Plaintiffs were induced to invest with the Defendants and when they entered into the contracts in this case that the Plaintiffs' accounts would not be managed by Registered Investment Advisors or professional money managers.

90. FWTB, Bantis, and Godfrey intended for Plaintiffs to rely upon the false information in entrusting their fiduciary accounts to FWTB.

91. The misrepresentations made to Plaintiffs were material.

92. Plaintiffs reasonably relied on the false information provided by FWTB, Bantis, and Godfrey, orally and in writing, in entrusting their fiduciary accounts to FWTB.

93. Had Plaintiffs been aware of the true facts that their accounts would not be managed by Registered Investment Advisors and professional money managers, and the management of their accounts would be done in a haphazard manner without a coherent investment strategy, they would not have entrusted their fiduciary accounts to FWTB.

94. Plaintiffs justifiably relied on FWTB's, Bantis's, and Godfrey's misrepresentations.

95. As a result of their justifiable reliance, Plaintiffs sustained damages representing the difference between the performance of their accounts and the return they would have received, had their accounts been managed by competent RIA's and professional money managers, as well as paying FWTB excess fees. Plaintiffs have also sustained damages in the attorney fees they must incur in bringing this lawsuit.

WHEREFORE, Plaintiffs pray for judgment in their favor on their Second Claim for Relief in an amount to be determined at trial against Defendants FWTB, Bantis, and Godfrey, together with costs, expert witness fees, pre- and post-judgment interest, and for such other and further relief as this Court may deem just.

## THIRD CLAIM FOR RELIEF
### Fraudulent Concealment/Non-Disclosure
### (Plaintiffs' Individual Claim Against Defendants FWTB, Bantis, and Godfrey)

96. All allegations of the Complaint are incorporated herein by this reference.

97. In 2018 FWTB was retained to manage accounts as a fiduciary.

98. Based upon the fiduciary relationship in which FWTB induced the Flecks to enter, FWTB, Bantis, and Godfrey had a duty to disclose material facts relating to their credentials and approach to the management of Plaintiffs' fiduciary accounts.

99. Further, consistent with C.R.S. 11-51-302(2) "It is unlawful to make, or cause to be made, to any prospective purchaser or to any existing or prospective customer or client any representation" unlawful representation concerning a license, registration, or exemption. Between and including February 2018 and May 2018 FWTB, Bantis, and Godfrey failed to disclose the material facts that Plaintiffs' fiduciary accounts would not be managed by registered investment advisors or professional money managers and that FWTB would not pursue a cohesive considered approach in managing the Flecks' accounts.

100. The concealed facts were material.

101. The facts were concealed with the intention of creating a false impression of the actual facts in the Flecks' minds.

102. Plaintiffs' decision to place their fiduciary accounts with FWTB was based upon their belief that FWTB's money managers were Registered Investment Advisors and credentialed professional money managers who would employ a cohesive and considered strategy to the management of Plaintiffs' accounts, considering their age and investment objectives.

103. At no time after the Plaintiffs placed their fiduciary accounts with FWTB in May of 2018 until the Plaintiffs removed their accounts in 2019 did FWTB, Bantis, and Godfrey disclose the material facts that Plaintiffs' fiduciary accounts would not be managed by Registered Investment Advisors or professional money managers and that FWTB would not pursue a cohesive considered approach in managing the Flecks' accounts.

104. The true facts were that FWTB's personnel who managed the Flecks' accounts were neither Registered Investment Advisors, nor professional money managers, they had no cohesive investment strategy, and the investments they made had no rhyme or reason.

105. Plaintiffs entrusted their fiduciary accounts to FWTB, justifiably relying on the assumption that their accounts would be managed by professional money managers employing a cohesive investment strategy.

106. Had Plaintiffs been aware of the true facts, they would not have employed FWTB to manage their fiduciary accounts.

107. Plaintiffs' reliance on the belief that FWTB employed credentialed money managers who would properly manage their fiduciary accounts was justifiable.

108. Plaintiffs sustained damage because of their justifiable reliance that the concealed facts were not different from what they reasonably believed the true facts to be.

109. Further, as Plaintiffs are a Trust, they are entitled to recover their attorney fees, in this action to preserve the corpus of the Trust.

WHEREFORE, Plaintiffs pray for judgment in their favor on their Third Claim for Relief in an amount to be determined at trial against Defendants FWTB, Bantis, and Godfrey, together with costs, expert witness fees, pre- and post-judgment interest, and such other and further relief as this Court may deem just.

### FOURTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (Plaintiffs' Individual Claim Against FWTB)

110. All prior allegations of the Complaint are incorporated herein by this reference.

111. FWTB undertook to act as a fiduciary in managing over $8 million in assets for and on behalf of Plaintiffs.

112. FWTB's fiduciary duties arise out of the common law including duties of loyalty, duty to act with competence, and duty to avoid self-dealing. Some of these duties have also been codified in the IAA and C.R.S. 11-51-201 which set minimum standards of care and do not preempt FWTB's common law fiduciary duties of care.

113. The fiduciary duties undertaken by FWBT arise from its services as an investment advisor and asset manager and are not related or defined by the Investment Agreement which merely promised to treat Plaintiffs' Property with the same general and undefined protection that it employs for its property but did not incorporate fiduciary duties.

114. FWTB breached its fiduciary duties as alleged herein by, among other things, failing to pursue a cohesive investment strategy, initiating transactions to generate management fees where a reasonably prudent fiduciary would not do, failing to follow the instructions of the Flecks regarding harvesting losses, and failing to have policies or procedures in place to allow for the harvesting of losses.

115. FWTB also breached its fiduciary duties by failing to exercise the level of care that a reasonable investment advisor would provide in managing Plaintiffs' Trust account.

116. FWTB's failure to harvest the losses after Plaintiffs' request to do so violated their fiduciary duties loyalty, competence, good faith, and avoidance self-dealing.

117. FWTB's actions, which constituted a breach of its fiduciary duties, involved willful misconduct, and gross negligence in the management of their fiduciary accounts.

118. As a direct and proximate result of FWTB's breaches of fiduciary duty, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment in their favor on their Fourth Claim for Relief in an amount to be determined at trial against Defendant FWTB together with costs, expert witness fees, pre- and post-judgment interest, and such other and further relief as this Court may deem just.

## FIFTH CLAIM FOR RELIEF
**Breach of Contract**
**(Plaintiffs' Individual Claim Against FWTB)**

119. All prior allegations of the Complaint are incorporated herein by this reference.

120. The Trusts entered into a contractual relationship with FWTB.

121. The contract for each Trust was in the form of: (1) an Investment Policy Statement; (2) Fee Schedule Agreement; (3) Investment Services and Custody Agreement; and (4) a New Account Information Form.

122. The contract between FWTB and the Trusts gave FWTB full discretion, including that of "attorney-in-fact" to act for the Trustees in carrying out their obligations.

123. The contracts also gave discretion to FWTB to pay itself for management fees and expenses.

124. The contracts provided that the securities in the Trusts which were in the custody of FWTB would be treated with "the same degree and protection which [FWTB] gives its own property."

125. The contracts between FWTB and the Trusts imposed limited and specified fiduciary obligations on FWTB including the duty to disclose. The contracts did not contemplate nor address other fiduciary obligations of FWTB such duties of loyalty, prudence, care, good faith, or avoidance of self-dealing.

126. In failing to provide review services as indicated in its contracts, FWTB failed to comply with its minimal contractual obligations.

127. Transactions in the Trust accounts were designed to and did generate management fees one would not reasonably expect in the prudent management of trust assets, and beyond those one would expect in handling its own property. Such conduct was also in violation of FWTB's contractual duties.

128. FWTB breached its contract with the Trusts by willfully making unnecessary transactions in order to create management fees, ignoring specific instructions from the Trusts and their trustees regarding harvesting losses, and failing to have a policy in place to harvest losses, and failing to fully inform Plaintiffs of their conduct, failing to review investments with Plaintiffs, and failing to productively invest Plaintiffs' money.

129. FWTB was able to engage in the contract alleged herein because it had been given total discretion to manage the Trusts.

130. FWTB's actions, which constituted a breach and bad faith breach of its contractual obligations, involved willful misconduct.

131. As a direct and proximate result of FWTB's breaches of contract as alleged herein, the Trusts have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment in their favor on their Fifth Claim for Relief in an amount to be determined at trial against Defendant FWTB together with costs, expert witness fees, pre- and post-judgment interest, and such other and further relief as this Court may deem just.

## JURY DEMAND

Plaintiffs demand a jury of six for all claims triable to a Jury.

Respectfully submitted this 14th day of May 2021.

PODOLL & PODOLL, P.C.

By: *s/Robert A. Kitsmiller*
Robert A. Kitsmiller
5619 DTC Pkwy, Ste. 1100
Greenwood Village, CO 80111
(303) 861-4000

**CERTIFICATE OF SERVICE**

   I hereby certify that on May 14, 2021, a true and accurate copy of the foregoing document was filed via CM/ECF which will send notice of the filing to counsel of record as follows:

BRYAN CAVE LEIGHTON PAISNER LLP
Timothy R. Beyer
Adam B. Stern
1700 Lincoln Street,
Suite 4100 Denver,
CO 80203
Telephone: (303) 861-7000
tim.beyer@bclplaw.com
adam.stern@bclplaw.com
***Attorneys for Defendants***
***First Western Trust Bank,***
***Charles Bantis, and Andrew Godfrey***

                   By: */s/Robert A. Kitsmiller*
                      Robert A. Kitsmiller