IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 21-cv-01073-CMA-GPG

THE AARON H. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck and Barbara G. Fleck,
THE BARBARA G. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck and Barbara G. Fleck,
AARON FLECK, and
BARBARA G. FLECK, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

FIRST WESTERN TRUST BANK,
CHARLES BANTIS, and
ANDREW GODFREY

    Defendants.

---

# ORDER AFFIRMING AND ADOPTING RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before the Court on the February 17, 2022 Recommendation of United States Magistrate Judge (Doc. # 47), wherein Judge Gordon P. Gallagher recommends that this Court deny Defendants' Motion to Dismiss the First Amended Complaint's Tort Claims ("Partial Motion to Dismiss") (Doc. # 21). Defendants timely filed an Objection to the Recommendation. (Doc. # 48). For the following reasons, the Court overrules Defendants' Objection, affirms and adopts the Recommendation, and denies Defendants' Partial Motion to Dismiss.

## I.     BACKGROUND

The factual background of this case is set out at length in Judge Gallagher's Recommendation, which the Court incorporates herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only the facts necessary to address Defendants' Objection to the Recommendation.

This case arises from Defendants' management of two investment accounts for Plaintiffs Aaron and Barbara Fleck ("the Flecks"). (Doc. # 47 at 3.) In May 2018, the Flecks hired Defendant First Western Trust Bank ("FWTB") to manage two trusts with a total amount of $8 million. (Doc. # 18 at ¶ 20.) Defendant Charles Bantis was President of the FWTB branch in Aspen, Colorado, and Defendant Andrew Godfrey was a trust officer at the FWTB Aspen branch. (*Id.* at ¶¶ 14, 15.)

The Flecks and Defendants agreed that the level of income to be generated from the accounts was between $400,000 to $500,000, with an anticipated overall return in the 6% range. (*Id.* at ¶ 24.) The trust management agreement was formalized in May 2018 when FWTB and the Flecks signed an Investment Policy Statement and Investment Services and Custody Agreement ("Investment Agreement").[1] (*Id.* at ¶ 32.)

---

[1] In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court generally may not look beyond the four corners of the complaint. However, the Court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). The Court agrees with Judge Gallagher that it is appropriate to consider the Investment Policy Statement and Investment Services and Custody Agreement in reviewing the instant motion because they are central to the First Amended Complaint and the parties do not dispute their authenticity.

The "Standard of Care and Indemnification" section of the Investment Agreement states, in its entirety:

> FWTB shall give to the securities in its custody the same degree of care and protection which it gives its own property. FWTB shall be under no duty to take or omit to take any action with respect to any assets held in this Account, except in accordance with the foregoing provisions. FWTB shall not be liable for any loss or depreciation (including, without limitation, any decrease in value of assets held in the account due to market activity) resulting from any action or inaction of FWTB taken in good faith pursuant to the terms of this Agreement or as the result of following a direction or instruction from Client. Client agrees to indemnify and hold harmless FWTB, and FWTB's officers, employees, and affiliates, from and against any loss, damage, and expense (including reasonable attorneys' fees) not directly resulting from a breach by FWTB of its standard of care or its willful misconduct. FWTB's right to indemnification under this Agreement will survive the termination of this Agreement for any reason.

(Doc. # 21-2 at 3–4.) The Investment Agreement also has a section titled "Waiver of Liability for Negligence" that provides:

> In return for Client's acceptance of the authority granted to FWTB in this Agreement, Client agrees that neither FWTB nor its agents shall be liable for any acts, omission, loss, depreciation, or error in judgment that may occur in connection with FWTB's handling of Client's account, except for such that may result from FWTB's gross negligence or willful misconduct. Client understands that nothing in this Agreement shall be construed as a waiver or limitation of any rights that Client may have under any applicable federal or state securities laws.

(*Id.* at 4.)

Plaintiffs allege that prior to entrusting their accounts with FWTB, Defendants told the Flecks that FWTB "employed professional money managers." (Doc. # 18 at ¶ 21.) Further, FWTB "marketed itself as a registered investment advisor, trust company and private wealth institution" with "strong attention to detail, strong commitment to fiduciary management and well-defined portfolio construction and team coverage for personal

3

service." (*Id.* at ¶ 27.) However, Plaintiffs contend that these and similar representations were "false and misleading." (*Id.* at ¶¶ 22, 29.) Plaintiffs allege that had they been aware that their fiduciary amounts would be managed by persons who were not registered investment advisors or professional money managers, they would not have placed their accounts with FWTB. (*Id.* at ¶ 23.)

Plaintiffs further allege that FWTB assured them "both orally and in writing that there would be strong communications and concise statements" in the management of their reviews. (Doc. # 18 at ¶ 37.) However, after Plaintiffs signed the Investment Agreement with FWTB, "not a single representative of FWTB met with them to check on their understanding of the investment strategies, the investments that were made, or if the Flecks understood FWTB's statements." (*Id.* at ¶ 38.) Moreover, Plaintiffs allege that in over 12 months of serving as a fiduciary, FWTB reported that it had disbursed over $800,000 to the Flecks, but the Flecks received no distributions. (*Id.* at ¶ 40.) Plaintiffs contend that FWTB "acted in a manner that benefited itself" by utilizing the portfolio to engage in "a significant level of transactions" that "result[ed] in management fees and mutual funds management fees." (*Id.* at ¶¶ 44–45.) Finally, Plaintiffs allege that when Aaron Fleck realized there were major losses in the trusts in excess of $500,000, he directed FWTB to harvest the losses to offset other gains the Flecks had realized on other personal transactions, and FWTB failed to do so. (*Id.* at ¶¶ 48–49.)

Plaintiffs filed suit in state court on March 16, 2021, and Defendants removed the case to federal court on April 16, 2021. (Doc. # 1.) In their Amended Complaint, Plaintiffs assert five claims for relief: (1) breach of fiduciary duty as an individual and

class action claim against FWTB; (2) fraudulent inducement as an individual claim against all Defendants; (3) fraudulent concealment/non-disclosure as an individual claim against all Defendants; (4) breach of fiduciary duty as an individual claim against FWTB; and (5) breach of contract as an individual claim against FWTB. *See generally* (Doc. # 18.) Defendants filed the instant Partial Motion to Dismiss with respect to Plaintiffs' four tort claims pursuant to Fed. R. Civ. P. 12(b)(6) on May 28, 2021.[2] (Doc. # 21.) The Court referred Defendants' Motion to Judge Gallagher, who issued his Recommendation (Doc. # 47) on February 17, 2022. Therein, Judge Gallagher recommends that this Court deny Defendants' Partial Motion to Dismiss. Defendants timely objected, (Doc. # 48), and Plaintiffs filed a Response to the Objection (Doc. # 49).

## II.     LEGAL STANDARDS

### A.    REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." In conducting the review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)

---

[2] Defendants do not seek dismissal of Plaintiffs' fifth claim for breach of contract. *See* (Doc. # 21 at 2.)

5

(citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")).

B.     **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

## III.   DISCUSSION

The Court's analysis will proceed in two steps. First, the Court will review the portions of the Recommendation to which no party objects in order to determine whether there are any clear errors in Judge Gallagher's findings and conclusions. Second, the Court will conduct a *de novo* review of the portions of the Recommendation to which Defendants object.

### A.   CLEAR ERROR REVIEW

Defendants' objection "focuses on the recommendation not to dismiss Plaintiffs' First and Fourth Claims for Relief for breach of fiduciary duty." (Doc. # 48 at 1.) As such, Defendants do not appear to object to Judge Gallagher's Recommendation to deny Defendants' Partial Motion to Dismiss with respect to Plaintiffs' Second and Third claims for relief. *See United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059–60 (10th Cir. 1996) (in order to be properly made and, therefore, to preserve an issue for *de novo* review by the district judge, an objection must be specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute" (quoting *Thomas*, 474 U.S. at 140)).

The Court has reviewed the relevant pleadings concerning Plaintiffs' Second and Third claims for relief as well as the Recommendation and applicable legal authority. Based on this review, the Court is satisfied that Judge Gallagher's Recommendation is

7

sound and not clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). Therefore, the Court affirms and adopts the applicable portions of the Recommendation and denies Defendants' Partial Motion to Dismiss with respect to Plaintiffs' Second and Third claims for relief.

**B.    *DE NOVO* REVIEW**

Defendants object to the Recommendation to the extent it concludes that Plaintiffs' First and Fourth Claims for Relief should survive dismissal. (Doc. # 48 at 10.) Specifically, Defendants argue that the Recommendation erred in deciding that Plaintiffs' First and Fourth Claims for Relief for breach of fiduciary duty are not barred by Colorado's economic loss rule or otherwise precluded under Colorado law. (*Id.* at 4.) For the reasons that follow, the Court overrules Defendants' Objection.

1.    Applicable Law

Colorado's economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). The economic loss rule is "intended to maintain the boundary between contract law and tort law." *Id.* at 1259. For a duty to be "independent" of a contract, and thus actionable in tort notwithstanding the economic loss rule, two conditions must be met: (1) "the duty must arise from a source other than the relevant contract," and (2) "the duty must not be a duty also imposed by the contract." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009). "To survive a motion to dismiss based on the economic loss rule,

8

[a plaintiff] merely has to allege sufficient facts, taken in the light most favorable to him, that would amount to a violation of a tort duty that is independent of the contract." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1020 (10th Cir. 2018) (quoting *Van Rees v. Unleaded Software, Inc.*, 2016 COA 51, ¶ 19, 373 P.3d 603, 608).

The common law imposes duties of care that are often independent of the obligations defined in a contract. *See Swan Global Investments, LLC v. Young*, No. 18-cv-03124-CMA-NRN, 2019 WL 5095729, at *7 (D. Colo. Aug. 20, 2019), *report and recommendation adopted*, 2020 WL 897654 (D. Colo. Feb. 25, 2020). "Deciding if a common law duty differs from the corresponding contractual duty turns on whether the 'duty of care . . . was memorialized in the contracts.'" *In re Est. of Gattis*, 2013 COA 145, ¶ 20, 318 P.3d 549, 555 (quoting *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004)). "Where a contract, by its language, subsumes an otherwise-applicable common law duty," then the economic loss rule "applies to bar any claims based on that duty." *Owens v. Nationstar Mortg. LLC*, No. 14-cv-01434-PAB-KLM, 2015 WL 1345536, at *2 (D. Colo. Mar. 23, 2015).

2. <u>Analysis</u>

In his Recommendation, Judge Gallagher found that Plaintiffs plausibly alleged claims for common law breach of fiduciary duty and concluded that there was insufficient information to warrant dismissal of those claims pursuant to the economic loss rule at this stage of the litigation. (Doc. # 47 at 8.) Specifically, Judge Gallagher noted that the "[t]he language in the contract giving rise to a contractual duty, if any at

all, is sparse" and determined that it would be premature to dismiss Plaintiffs' claims without further factual development or discovery. (*Id.*)

Defendants first object that Plaintiffs' breach of fiduciary duty claims are barred by the economic loss rule because "there is no independent source of the alleged fiduciary duties" under Colorado common law, and Plaintiffs purportedly do not provide any legal authority for common law fiduciary duties. (Doc. # 48 at 5.) The Court disagrees that there is no such authority. The Colorado Supreme Court has explained that a "claim for breach of fiduciary duty is a tort aimed at remedying economic harm suffered by one party due to a breach of duties owed in a fiduciary relationship." *Rocky Mountain Exploration, Inc. v. Davis Graham & Stubbs LLP*, 2018 CO 54, ¶ 60, 420 P.3d 223, 235. The court defined a fiduciary relationship as a relationship "between two persons when one is under a duty to act or give advice for the benefit of the other on matters within the scope of the relationship." *Id.* Certain fiduciary relationships are recognized as a matter of law, including the relationships between an attorney and a client, a trustee and a trust beneficiary, parties to a joint venture, and "when one party occupies a superior position relative to another and assumes a duty to act in the dependent party's best interest." *Id.* at ¶ 61, 420 P.3d at 235. Such fiduciary relationships "trigger an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship." *Town of Alma*, 10 P.3d at 1263.

Plaintiffs allege that FWTB "undertook to act as a fiduciary," "held itself out as a fiduciary to its investors," and "advertised that its services in trust and wealth management teams 'are held to a fiduciary standard.'" (Doc. # 18 at ¶¶ 77, 79.) Plaintiffs

10

further allege that FWTB breached several of its fiduciary duties, including its duty "to avoid self-dealing" by "willfully ma[king] investment decisions, that were . . . designed and intended to generate and realize management fees." (*Id.* at ¶¶ 61, 80). Reviewing the pleadings in the light most favorable to Plaintiffs, the Court is satisfied that the First Amended Complaint contains sufficient factual matter, accepted as true, to allege that a fiduciary relationship existed between Plaintiffs and FWTB and that FWTB breached its fiduciary duties. *See Iqbal*, 556 U.S. at 678. The Court agrees with Judge Gallagher that dismissal at this stage would be inappropriate without further factual development and discovery as to the nature and extent of FWTB's alleged fiduciary duties.

Next, Defendants object that even if common law fiduciary duties exist, the parties' Investment Agreement disclaims any such duties. (Doc. # 48 at 7.) In support, Defendants point to the Colorado Supreme Court's language in *Rocky Mountain Exploration, Inc.* that "[e]ven when a fiduciary relationship exists . . . parties to that relationship may modify—or even disclaim—that relationship." ¶ 62, 420 P.3d at 235. Defendants argue that the Standard of Care and Indemnification section of the Investment Agreement disclaims a fiduciary relationship by providing that "FWTB shall be under no duty to take or omit to take any action with respect to any assets held in this Account, except in accordance with the foregoing provisions." (Doc. # 48 at 7–8.) The Court disagrees with Defendants that the cited language in the Investment Agreement suffices to disclaim a fiduciary relationship. In *Rocky Mountain Exploration, Inc.*, the court determined that a contract "expressly disclaimed" any fiduciary relationship where the contract explicitly stated "the parties **shall not be considered**

**fiduciaries**." ¶ 63, 420 P.3d at 235 (emphasis added). The court explained, "In our view, this language is clear and unambiguous and expressly disclaims any fiduciary relationship that otherwise may have existed between [the parties]." *Id.* at ¶ 64, 420 P.3d at 235. No such clear and unambiguous language exists in the Investment Agreement in the instant case. As such, the Court finds that dismissal on the basis of a disclaimed fiduciary relationship is not warranted.

Next, Defendants object that the Recommendation erred in its analysis of the economic loss rule because any alleged fiduciary duties are also imposed by the Investment Agreement and thereby "subsumed" by the contract. (Doc. # 48 at 8.) Defendants urge the Court to analogize the instant case to *Micale v. Bank One N.A. (Chicago)*, where the court found that the economic loss rule precluded plaintiff's tort claims because "the contract between the parties encompasses **precisely the same duties and obligations** on behalf of Defendants as Plaintiff alleges as the basis of his tort claims." 382 F. Supp. 2d 1207, 1221 (D. Colo. 2005) (emphasis added). This Court agrees with Judge Gallagher that *Micale* is inapposite because "the contractual language noted in *Micale* is not identical to the instant contractual provisions." (Doc. # 47 at 9.) Notably, the contract in *Micale* required defendants to "take into account the 'best interests' of Plaintiff"; "act in 'good faith'"; "refrain from 'willful misconduct'"; and "'exercise . . . due care,'" among other duties and obligations. 382 F. Supp. 2d at 1221. By contrast, the "Standard of Care and Indemnification" provision of the Investment Agreement between the Flecks and FWTB provides merely that "FWTB shall give to the securities in its custody the same degree of care and protection which it gives to its own

12

property." (Doc. # 21-2 at 3.) The Court cannot determine, based on the record before it, whether this standard of care subsumes FWTB's alleged fiduciary duties.

The Court agrees with Judge Gallagher that barring Plaintiffs' breach of fiduciary duty claims under the economic loss doctrine, at this stage, would require the Court "to read language into the contract that is simply not there." (Doc. # 47 at 9.) Moreover, the Court finds that Plaintiffs have alleged sufficient facts, taken in the light most favorable to them, that would amount to a violation of a tort duty that is independent of the Investment Agreement. Therefore, dismissal pursuant to the economic loss rule is inappropriate. *See Van Rees*, ¶ 19, 373 P.3d at 608 ("[W]e must also be cautious of the corollary potential for contract law to swallow tort law."). The Court overrules Defendants' Objection and affirms and adopts Judge Gallagher's Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Defendants' Objection (Doc. # 48) is OVERRULED;

- the February 17, 2022 Recommendation of United States Magistrate Judge (Doc. # 47) is AFFIRMED and ADOPTED as an order of this Court;

- accordingly, Defendants' Motion to Dismiss the First Amended Complaint's Tort Claims (Doc. # 21) is DENIED.

DATED: March 23, 2022

                                        BY THE COURT:

                                        _____
                                        CHRISTINE M. ARGUELLO
                                        United States District Judge