IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 21-cv-01073-CMA-GPG

THE AARON H. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck and Barbara G. Fleck,
THE BARBARA G. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck and Barbara G. Fleck,
AARON FLECK, and
BARBARA G. FLECK, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

FIRST WESTERN TRUST BANK,
CHARLES BANTIS, and
ANDREW GODFREY

    Defendants.

---

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

---

This matter is before the Court on Plaintiffs' Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Motion"). (Doc. # 56.) For the following reasons, the Motion is denied.

### I.    BACKGROUND

The factual and procedural background of this case has been set out at length in prior orders. (Doc. ## 47, 50.) The Court thus offers only a brief summary.

This case arises from Defendants' management of two investment accounts for Plaintiffs Aaron and Barbara Fleck ("the Flecks"). (Doc. # 18 at ¶ 20.) In May 2018, the

Flecks hired Defendant First Western Trust Bank ("FWTB") to manage two trusts with a total amount of $8 million. (*Id.*) The parties signed an Investment Policy Statement which provided, among other things, the amount of the investment, the investment time horizon, a cash flow objective of $500,000 per year, and a risk tolerance described as "stable growth and low level of income; steady growth is expected." (*Id.* at ¶ 33.) The Investment Policy Statement did not mention tax loss harvesting.[1]

Plaintiffs allege that on December 2, 2018, Aaron Fleck learned that there were major losses in both Trust portfolios and instructed FWTB to harvest the losses to offset capital gains he had realized on other transactions. (*Id.* at ¶ 48.) FWTB did not harvest the losses. (*Id.* at ¶ 49.) As a result, Plaintiffs assert that they incurred damages "by the oversight, breaches of fiduciary duties, and mismanagement of portfolio accounts where losses existed." (*Id.* at ¶ 4.)

Plaintiffs initiated this action on March 16, 2021. (Doc. # 4.) In their Amended Complaint, they assert a claim for breach of fiduciary duty against FWTB on their own behalf and on behalf of a proposed class "of all similarly situated persons and entities nationwide consisting of all persons and entities who had accounts or portfolios consisting of assets managed by FWTB." (Doc. # 18 at ¶ 67.) In addition to the breach of fiduciary duty class action claim, Plaintiffs allege several individual claims, including fraudulent inducement against all Defendants; fraudulent concealment/non-disclosure

---

[1] Tax loss harvesting is a process by which taxpayers sell securities at a loss to offset tax liability with respect to gains created by other investments or ordinary income. *See* (Doc. # 56-1 at 2–3.) The process occurs at the end of the year and can be used as a strategy to offset current capital gains or future gains. (*Id.*)

against all Defendants; breach of fiduciary duty as an individual claim against FWTB; and breach of contract against FWTB.

Plaintiffs now move for class certification pursuant to Federal Rule of Civil Procedure 23 on the issue of "whether FWTB's failure to have a tax-loss-harvesting policy (and to harvest losses) was a breach of fiduciary duty to its beneficiary-accountholders." (Doc. # 56 at 3.) Defendants filed a Response opposing class certification (Doc. # 59), and Plaintiffs followed with their Reply (Doc. # 69). The matter is now ripe for review.

## II.   LEGAL STANDARD

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). A district court may certify a class action if the proposed class satisfies the prerequisites of Rule 23(a) as well as the requirements of one of the types of classes identified in Rule 23(b). *Soseeah v. Sentry Ins.*, 808 F.3d 800, 808 (10th Cir. 2015). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are known, respectively, as "numerosity," "commonality," "typicality," and "adequacy." The rule "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, a party seeking class certification must "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at 350). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart*, 564 U.S. at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

The party seeking class certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Roderick*, 725 F.3d at 1217 (quoting *Comcast*, 569 U.S. at 33). In this case, Plaintiffs seek class certification pursuant to two provisions: Rule 23(b)(1) and (3). (Doc. # 56 at 10.) Rule 23(b)(1) permits a class action to be maintained if prosecuting separate actions by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Separately, Rule 23(b)(3) allows a class to proceed when "questions of law or fact common to class members predominate over any questions affecting only individual

4

members," ("predominance"), and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority").

## III.  DISCUSSION

Plaintiffs seek certification on the issue of whether FWTB's failure to have a policy relating to tax loss harvesting was a breach of fiduciary duty to its beneficiary accountholders. (Doc. # 56 at 3.) They propose a class of "all similarly situated persons and entities nationwide consisting of all persons and entities who had accounts or portfolios consisting of assets managed by FWTB." (Doc. # 18 at ¶ 16.) Essentially, Plaintiffs argue that FWTB's failure to maintain a tax loss harvesting policy, by itself, constituted a breach of fiduciary duty and damaged all class members. (Doc. # 56 at 2.)

Defendants respond that Plaintiffs have not met their burden to certify a class because Plaintiff's breach of fiduciary duty claim "is highly individualized and fact bound." (Doc. # 59 at 1.) Specifically, Defendants contend that "the existence or non-existence of [a tax harvesting] policy does not answer the question of whether FWTB breached a fiduciary duty to the Flecks or any other putative class member." (*Id.* at 2.) Rather, Defendants assert that each claim would turn on discrete factual issues, including the understanding between FWTB and each client about the importance of harvesting tax losses to that client, the client's investment objectives, the client's yearend tax situation, communications between FWTB and the client regarding the portfolio and tax loss harvesting, and market conditions at the time. (*Id.*) Defendants further argue that damages would turn on even more individualized issues, such as how unsold securities performed, the client's tax bracket, and the client's other capital gains

5

and losses. (*Id.*) As such, Defendants assert that Plaintiffs cannot carry their burden of establishing the commonality and typicality prerequisites of Rule 23(a) or any of the requirements of Rule 23(b). In addition, Defendants contend that the Flecks are inadequate representatives owing to their advanced ages, memory impairments, and other medical issues. (*Id.* at 20.)

The Court has significant reservations about whether Plaintiffs have met their burden with respect to a number of the Rule 23(a) prerequisites. However, in the interest of judicial economy, the Court will focus its analysis on (1) whether Rule 23(b)(1) applies to this case; and (2) whether Plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance requirement.

**A.     RULE 23(b)(1)**

Classes certified under Rule 23(b)(1) concern situations where "individual adjudications would be impossible or unworkable." *Wal-Mart*, 564 U.S. at 361. Rule 23(b)(1)(A), which addresses the risk of establishing "incompatible standards of conduct," applies "where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(b)(1)(B) covers cases in which individual adjudications "as a practical matter would be dispositive of the interests of the other members" or "would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). An example of such a case is a "limited fund case" in which "numerous

persons make claims against a fund insufficient to satisfy all claims." *Wal-Mart*, 564 U.S. at 361 n.11 (quoting *Amchem*, 521 U.S. at 614). Unlike Rule 23(b)(3) classes, a class certified under Rule 23(b)(1) is a mandatory class: "The Rule provides no opportunity for (b)(1) . . . class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Id.* at 362.

Plaintiffs contend that certification under Rule 23(b)(1) is appropriate in this case because prosecuting separate actions could establish incompatible standards of conduct for FWTB regarding its obligation to maintain a tax loss harvesting policy for its fiduciary accounts. (Doc. # 56 at 11.) Defendants dispute that Rule 23(b)(1) is applicable at all to this case because FWTB is not obliged by law or otherwise to treat the members of the class alike with respect to tax loss harvesting and because individualized monetary claims belong under Rule 23(b)(3). (Doc. # 59 at 23–24.)

The Court agrees with Defendants that Plaintiffs have not met their burden of establishing a right to certification under Rule 23(b)(1). Although Plaintiffs argue generally that separate actions could establish incompatible standards for FWTB regarding its obligation to maintain a tax loss harvesting policy, Plaintiffs do not demonstrate that FWTB is "obliged to treat the members of the class alike" with respect to tax loss harvesting or maintaining a written policy. *Amchem*, 521 U.S. at 614. Instead, Plaintiffs concede that "portfolio managers must address each client differently." (Doc. # 69 at 11–12.) Further, Plaintiffs provide no authority for their position that the mere absence of a written policy regarding tax loss harvesting constitutes a *per se*, large-scale breach of fiduciary duty that would be impossible to adjudicate individually.

7

Moreover, Plaintiffs seek only monetary damages on behalf of the putative class. (Doc. # 18 at ¶ 84.) The Supreme Court and numerous other courts have stated that "individualized monetary claims belong in Rule 23(b)(3)." *Wal-Mart*, 564 U.S. at 363; *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) ("Certification under Rule 23(b)(1)(A) is . . . not appropriate in an action for damages."); *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1195 (11th Cir. 2009) ("Because the risk that judicial action will create incompatible standards of conduct is low when a party seeks compensatory damages, only actions seeking declaratory or injunctive relief can be certified under Rule 23(b)(1)(A)."). When a class action seeks substantial damages, "the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out." *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999); *see Harrington v. City of Albuquerque*, 222 F.R.D. 505, 516 (D.N.M. 2004) ("Where monetary damages are the predominate remedy sought, certification is usually only appropriate pursuant to Fed. R. Civ. P. 23(b)(3)."). Plaintiffs have made no showing that certification pursuant to Rule 23(b)(1) is proper in a case where, as here, the action primarily seeks monetary damages for breach of fiduciary duty.

For these reasons, the Court finds that Plaintiffs have not met their burden of establishing a right to certification under Rule 23(b)(1).

### B.    COMMONALITY AND PREDOMINANCE

Plaintiffs next seek certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and the class action "is superior to other

available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Defendants argue that Plaintiffs have not demonstrated either commonality under Rule 23(a) or predominance under Rule 23(b)(3).

The commonality inquiry of Rule 23(a) asks whether the proposed class members' claims raise a "common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The commonality requirement does not ask solely if there are questions common to the class, since "any competently crafted class complaint literally raises 'common questions.'" *Id.* at 349 (citation omitted). Rather, it asks whether there are common *answers* that may be generated by a class-wide proceeding. *See id.* at 350. An issue can be resolved on a class-wide basis when "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). An individual issue, by contrast, is one where members of a proposed class will need to present evidence that varies from member to member. *Id.*

The predominance inquiry is "more stringent" than the commonality requirement. *Amchem*, 521 U.S. at 609. It takes the commonality analysis and asks whether those common issues "*predominate* over individual questions." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). In other words, "the predominance prong asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating,

9

individual issues." *Id.* Additionally, the district court must "consider the extent to which material differences in damages determinations will require individualized inquiries." *Roderick*, 725 F.3d at 1220. "Although individualized monetary claims belong in Rule 23(b)(3), predominance may be destroyed if individualized issues will overwhelm those questions common to the class." *Id.* (citation and quotation marks omitted).

The class action claim in this case is for breach of fiduciary duty. Under Colorado law, a claim for breach of fiduciary duty requires a plaintiff to prove (1) that the defendant was acting as a fiduciary of the plaintiff; (2) that the defendant breached a fiduciary duty to the plaintiff; (3) that the plaintiff incurred damages; and (4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages. *See Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993).

Plaintiffs assert that "the common question to be resolved" rests in the second element: "whether FWTB breached its fiduciary duty to its fiduciary account holders by failing to have a tax harvesting policy or procedure in place." (Doc. # 56 at 6.) However, Plaintiffs provide no authority or evidentiary support for their contention that the *absence* of a tax loss harvesting policy, by itself, qualifies as a breach of fiduciary duty as to all beneficiaries of FWTB accounts.[2] The logic of this argument is tenuous at best: It is certainly possible for a bank to comply with all of its fiduciary duties to a beneficiary

---

[2] Although the Court should not focus on whether Plaintiffs will prevail on the merits, the "rigorous analysis" required by Rule 23 frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351; *see also Gen. Tel. Co.*, 457 U.S. at 160 ("[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978))).

accountholder in the absence of written policies, just as it is possible for a bank to breach its fiduciary duties in the face of written policies. The Court agrees with Defendants that resolving each breach of fiduciary claim will demand more than simply inquiring into the *existence* of a policy. It will instead require assessing a multitude of factual considerations individualized to each putative class member, including the tax loss harvesting preferences of each client, the communication that occurred between FWTB and each client relating to tax loss harvesting, and the specific characteristics of each client's investment portfolio, other gains and losses, and tax circumstances. Because the evidence sufficient to resolve each breach of fiduciary duty claim will vary significantly from member to member, the question of whether FTWB breached its fiduciary duty to each client is an individual question, not a common question. *See Tyson Foods*, 577 U.S. at 453.

Moreover, Plaintiffs do not establish that the "common question" of whether FWTB breached its fiduciary duty as to each accountholder by not having a tax loss harvesting policy in place "predominates" over questions affecting only individual members. Significantly, to prevail on a breach of fiduciary duty claim, each individual member would have to establish that they incurred damages and that FWTB was the cause of those damages. *See Graphic Directions*, 862 P.2d at 1022. However, assessing whether a client incurred damages and whether FWTB caused those damages will again require probing into "highly individualized facts and circumstances," *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1229 (10th Cir. 2013), such as each client's objectives with tax loss harvesting, other realized gains and losses, portfolio

11

performance, and general investment goals, in addition to particularized considerations of timing and market conditions. Certification under Rule 23(b)(3) is inappropriate where, as here, there are individualized facts and defenses precluding "a common issue that could be resolved efficiently in a single proceeding." *Id.* at 1228.

For these reasons, the Court finds that Plaintiffs have failed to establish commonality pursuant to Rule 23(a) or predominance under Rule 23(b)(3).[3] It is clear in this case that the factual inquiries for each breach of fiduciary duty claim will require a presentation of evidence for each putative class member. Because Plaintiffs have not established a common, predominant issue that could be resolved efficiently in a single proceeding, Plaintiffs' Motion for Class Certification must be denied.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification (Doc. # 56) is DENIED.

DATED:  December 27, 2022

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge

---

[3] Because the Court finds that Plaintiffs have not met their burden of establishing commonality or predominance, the Court need not inquire into the other factors under Rule 23(a) and (b)(3).