**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action Number: 21-cv-01073-CMA-CPG

THE AARON H. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck
and Barbara G. Fleck,
THE BARBARA G. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck
and Barbara G. Fleck,
AARON FLECK, and BARBARA G. FLECK, on behalf of themselves and all other
similarly situated,

     Plaintiffs,

v.

 FIRST WESTERN TRUST BANK
 CHARLES BANTIS, and
 ANDREW GODFREY

     Defendants.

---

## DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

---

Defendants First Western Trust Bank ("FWTB"), Charles Bantis, and Andrew

Godfrey submit this answer to Plaintiffs' Amended Complaint, Dkt. No. 18.

### Introduction and Background

1.      This lawsuit concerns Defendants' breaches of fiduciary duties in failing to

harvest losses in portfolios managed by Defendants.

**RESPONSE**:  Defendants deny that they breached any fiduciary duties, but

admit that paragraph 1 summarizes Plaintiffs' allegations.

2.      It turns out that despite the very common tax benefit of offsetting gains by

losses in a tax year, Defendants, who held themselves out as professional investment

advisors, money managers, and fiduciaries, had no polices or procedures in place to

harvest short-term losses at the end of a tax year.

**RESPONSE**:  Defendants deny the allegations in paragraph 2.

3.      As a result of Defendants' beaches [sic] of fiduciary duties, gross negligence, and willful conduct, customers and beneficiaries of portfolios managed by Defendants, lost the opportunity to offset capital gains by losses on their tax returns.

**RESPONSE**: Defendants deny the allegations in paragraph 3.

4.      Plaintiffs have suffered losses by the oversight, breaches of fiduciary duties and, mismanagement of portfolio accounts where losses existed.

**RESPONSE**: Defendants deny the allegations in paragraph 4.

5.      On behalf of themselves and the proposed class, Plaintiffs seek damages in the form of the tax benefit that could have been realized had Defendant had proper policies and procedures for customers to harvest capital losses in their accounts held and managed by Defendants, as a fiduciary.

**RESPONSE**: Defendants deny that Plaintiffs are entitled to the relief sought or that they failed to have proper policies and procedures for customers to harvest capital losses, but admit that Plaintiffs seek the damages alleged in paragraph 5.

6.      Plaintiffs, on behalf of themselves, seek damages resulting from the Defendants' breaches of fiduciary duties in managing their accounts as fiduciaries.

**RESPONSE**:  Defendants deny that Plaintiffs are entitled to the relief sought or that they breached any fiduciary duties, but admit that Plaintiffs seek the damages alleged in paragraph 6.

7.      Plaintiffs also assert that they were fraudulently induced to entrust the

management of their investment accounts to FWTB, and that FWTB concealed material information from them towards the end of securing the management of their accounts.

**RESPONSE**:  Defendants admit that Plaintiffs assert the allegation in paragraph 7, but deny that the allegation is correct.

## PARTIES AND VENUE

8.      Plaintiff, the Aaron H. Fleck Revocable Trust ("Aaron Fleck Trust"), is a revocable trust with an address in Colorado at 1481 Sierra Vista Drive, Aspen, Colorado 81611.

**RESPONSE**: Defendants deny the allegations in paragraph 8 because the Aaron Fleck Trust no longer exists.

9.      The Trustees of the Aaron Fleck Trust, Aaron H. Fleck and Barbara G. Fleck (collectively the "Flecks") reside at the same address. (The Flecks are also identified herein individually as "Plaintiffs".)

**RESPONSE**:    Defendants deny the allegations in paragraph 9 because the Aaron Fleck Trust no longer exists.

10.      Plaintiff, the Barbara G. Fleck Revocable Trust ("Barbara Fleck Trust"), is a revocable trust with an address in Colorado at 1481 Sierra Vista Drive, Aspen, Colorado 81611.

**RESPONSE**:  Defendants deny the allegations in paragraph 10 because the Barbara Fleck Trust no longer exists.

11.      The Trustees of the Barbara Fleck Trust, Aaron H. Fleck and Barbara G. Fleck, reside at the same address.

**RESPONSE**: Defendants deny the allegations in paragraph 11 because the Barbara Fleck Trust no longer exists.

12.     Sometimes, the Aaron Fleck Trust and the Barbara Fleck Trust are collectively referred to as the "Trusts". The Trusts and the Flecks are sometimes referred to collectively as the "Plaintiffs".

**RESPONSE**:  Defendants admit the allegations in paragraph 12.

13.     Defendant, First Western Trust Bank ("FWTB") is a Colorado banking corporation in good standing with the principal address in Colorado at 1900 16th Street, Suite 1200, Denver, Colorado 80202.

**RESPONSE**: Defendants admit the allegations in paragraph 13.

14.     Defendant Charles Bantis ("Bantis"), at all times relevant hereto, was the President of FWTB's Aspen branch.

**RESPONSE**:  Defendants admit the allegations in paragraph 14.

15.     Defendant Andrew Godfrey ("Godfrey"), at all times relevant hereto, was a trust officer employed by FWTB's Aspen branch.

**RESPONSE**: Defendants deny the allegations in paragraph 15 because Mr. Godfrey was a wealth advisor, not a trust officer.

16.     The Class consists of all similarly situated persons and entities nationwide consisting of all persons and entities who had accounts or portfolios consisting of assets managed by FWTB.

**RESPONSE**:  Defendants deny the allegations in paragraph 16 because the motion for class certification was denied.

17.     Venue is proper in Pitkin County pursuant to Rule 98, C.R.C.P., because the transactions at issue herein were initiated by FWTB's Aspen office, in Pitkin County, Colorado.

**RESPONSE**:  Defendants deny the allegations in paragraph 17 because the case was removed and is no longer in Pitkin County.

## ALLEGATIONS

18.     All prior allegations of the Complaint are incorporated herein by this reference.

**RESPONSE**:  Defendants' prior responses are incorporated herein by reference.

19.     In December 2017, the Flecks secured a bridge loan from FWTB for a new primary residence as they pursued the sale of their then current residence. The Flecks were pleased and appreciative of the help that FWTB provided to them with regard to the bridge loan.

**RESPONSE**:  Defendants admit the allegations in paragraph 19.

20.     In May 2018, the Flecks, based upon their prior positive interaction with FWTB, agreed to allow FWTB to manage the Trusts. The total amount to be managed by FWTB in the Trusts was $8 million.

**RESPONSE**:  Defendants admit that the Flecks agreed to allow FWTB to manage $8 million of the Trusts' assets pursuant to the Investment Policy Statement, but otherwise deny the allegations in paragraph 20.

21.     Prior to entrusting their accounts to FWTB, Plaintiffs were assured by FWTB, Bantis, and Godfrey, that FWTB employed professional money managers.

**RESPONSE**:   Defendants admit that Bantis and Godfrey introduced Plaintiffs to a portfolio manager (Doug Barker) at FWTB before Plaintiffs agreed to allow FWTB to invest funds on their behalf, but otherwise deny the allegations in paragraph 21.

22.     This representation was false and misleading.

**RESPONSE**:  Defendants deny the allegations in paragraph 22.

23.     Had Plaintiffs been aware that their fiduciary amounts would be managed by person who were not registered investment advisors and were not professional money managers, they would not have placed their accounts with FWTB.

**RESPONSE**:  Defendants deny the allegations in paragraph 23.

24.     In establishing the accounts with FWTB it was agreed that the level of income to be generated from the $8 million was between $400,000 to $500,000, with an anticipated overall return to be in the 6% range. Aaron Fleck ("Fleck") was 97 years old at the time.

**RESPONSE**: Defendants admit the allegations in the first sentence of paragraph 24 refer to the goals set by the Investment Policy Statements, but deny that the annual return, which was the anticipated return over a 10+ year time horizon, was guaranteed.  Defendants refer to the Investment Policy Statement for its complete terms.  Defendants admit the allegations in the second sentence of paragraph 24.

25.     Aaron Fleck had experience in the field of portfolio management and had been an investment broker for over 50 years. With that knowledge, he wanted to

provide all discretion and fiduciary duty, and the management of the money given his advanced age, to FWTB.

**RESPONSE**:  Defendants admit the allegations in the first sentence of paragraph 25, and deny the allegations in the second sentence of paragraph 25.

26.     The Flecks were well aware that the funds would be managed well beyond their lifetimes.

**RESPONSE**: Defendants admit that the funds could have been managed beyond the Flecks' lifetimes, but otherwise deny the allegations in paragraph 26.

27.     FWTB marketed itself as a registered investment advisor, trust company and private wealth institution, combined with strong attention to detail, strong commitment to fiduciary management and well-defined portfolio construction and team coverage for personal service. FWTB promotes itself as follows:

> At First Western Trust, we understand that much of building your wealth involves protecting your family, creating a lasting legacy, and ensuring the ability to live out the lifestyle you desire. Our experienced teams are discipline in all areas of wealth management, including wealth planning, trust and estates, investment management, private banking, risk management/ insurance, and mortgage services. We have a team, not just one person, working for your benefit so that you gain access to the best financial planning minds in the business.

**RESPONSE**: Defendants deny the allegations in the first sentence of paragraph 27.  Defendants admit the allegations in the second sentence of paragraph 27.

28.     Regarding Trust Investment Management Services, FWTB markets its management as follows:

> In addition to designing your personal portfolio, our experienced trust investment management service teams can also serve as an ***investment advisor*** to your trusts. We are dedicated to supporting your beneficiaries and building an [sic] trust investment management plan that will help you leave a positive and lasting legacy. (***Emphasis added***).

**RESPONSE**:   Defendants admit the allegation in paragraph 28.

29.     The representations in FWTB's promotional material and investment policy statement were also false and misleading.

**RESPONSE**:  Defendants deny the allegations in paragraph 29.

30.     Combined with the false oral representations, the Flecks were fraudulently induced to place their fiduciary accounts with FWTB.

**RESPONSE**:  Defendants deny the allegations in paragraph 30.

31.     In carrying out its services, FWTB represented that it was held to a fiduciary standard:

> At First Western Trust, our trust and wealth management teams are held to a fiduciary standard, which means that we are committed to ensuring that your wishes are carried out and that your loved ones are taken care of to the best of our ability.

**RESPONSE**: Defendants admit that FWTB stated its "trust and wealth management teams are held to a fiduciary standard," and that the quoted language was contained in FWTB's materials, but otherwise deny the allegations in paragraph 31.

32.     In May 2018, FWTB and the Flecks, on behalf of the Trusts, entered into an Investment Policy Statement. The Investment Policy Statement, originally drafted in February 2018, purported to be a plan developed jointly by FWTB and The Flecks. The

Investment Policy Statement provided that FWTB would:

> use this IPS in managing, monitoring and evaluating your investment assets. This IPS reflects the information you have provided about your present and future financial circumstances and your attitude, expectations and objectives in the investment of your assets. It is provided to document the long-term adherence to an agreed upon investment program that would include various asset classes, styles, and acceptable ranges. In total, it is designed with the goal of producing a sufficient level of overall diversification and total investment return over the long term while controlling the overall risk of the portfolio. It is important that you and First Western review the provisions of this IPS on a regular basis because your personal circumstances may change overtime.

**RESPONSE**: Defendants admit the allegations in paragraph 32, except they deny any insinuation that the Investment Policy Statement was not jointly developed by FWTB and the Flecks.  Defendants refer to the Investment Policy Statement for its full contents.

33.     The Investment Policy Statement went on to describe in general terms the amount of the investment, the investment time horizon, which was 10 plus years, the cash flow objective which was $500,000 per year and a risk tolerance which provided "stable growth and low level of income; steady growth is expected."

**RESPONSE**:  Defendants admit the allegations in paragraph 33, but refer to the Investment Policy Statement for its full contents.

34.     The initial holding limits and ranges for the investments and asset allocations were as follows:

| Asset Class | Min% | Target% | Max% |
|---|---|---|---|
| US Large Cap Equities | 0% | 13% | 28% |
| US Mid Cap Equities | 0% | 4% | 14% |

| | | | |
|---|---|---|---|
| US Small Cap Equities | 0% | 6% | 16% |
| International Equities | 2% | 12% | 22% |
| Emerging Markets | 0% | 3% | 13% |
| High Yield Bonds | 0% | 4% | 14% |
| Fixed Income | 39% | 49% | 59% |
| Alternatives | 0% | 8% | 18% |
| Cash and Equivalents | 0% | 1% | 20% |

**RESPONSE**:  Defendants admit the allegations in paragraph 34, but refer to the

Investment Policy Statement for its full contents.

35.    The Investment Policy Statement also provided:

> On a no less than quarterly basis, you will receive a custodial statement detailing your portfolio holdings. Performance is calculated quarterly on both an absolute and relative basis as compared to appropriate benchmark indices. First Western will review your investment program with you periodically to determine the continued feasibility of achieving your investment objectives and the appropriateness of this IPS for achieving those objectives.

**RESPONSE**:  Defendants admit the allegations in paragraph 35, but refer to the

Investment Policy Statement for its full contents.

36.    Further in the Investment Services and Custody Agreement, FWTB stated

it "shall provide Client with an investment policy statement outlining the Clients'

investment strategies and goals."

**RESPONSE**:  Defendants admit the allegations in paragraph 36, but refer to the

Investments Services and Custody Agreement for its full contents.

37.    Although FWTB assured the Flecks both orally and in writing that there

would be strong communications and concise statements in the management of their

funds and periodic reviews, FWTB acted contrary to such representations. There was

minimal client engagement. The statements that were provided were conflicting in terms of

meeting the objectives of Aaron Fleck and Barbara Fleck. There was no clear path of investment strategy as a fiduciary provided by FWTB and there was no periodic review provided by the "team" at FWTB.  As a fiduciary, FWTB was required to represent the sole interests of its clients and to ensure that its clients fully understood how their trust would be managed and what kind of communication they could expect. In other words, FWTB was obligated to fully disclose what it was doing, particularly since FWTB was given such broad discretion in managing the Trusts' portfolio.

**RESPONSE**:  Defendants deny the allegations in paragraph 37.

38.     From the time the Flecks signed their Trust Agreements with FWTB, not a single representative of FWTB met with them to check on their understanding of the investment strategies, the investments that were made, or if the Flecks understood FWTB's statements.

**RESPONSE**:   Defendants deny the allegations in paragraph 38.

39.     During the time it acted on behalf of the Flecks, FWTB used more than one statement format. This resulted in confusion.

**RESPONSE**:  Defendants admit that they provided different types of statements (for example, monthly statements are different than quarterly statements). Defendants lack a sufficient basis to admit or deny the allegations in the second sentence of paragraph 39 and deny them on that basis.

40.     Over 12 months in serving as a fiduciary, FWTB reported that it had disbursed over $800,000 to the Flecks. The Flecks, however, received no distributions. This is yet another example of the gross negligence that permeated FWTB's handling of

the Flecks' account.

**RESPONSE**:  Defendants deny the allegations in paragraph 40.

41.     The only standard of care addressed in the controlling documents executed between the Plaintiffs and the Defendants is memorialized in the Investment Agreement. FWBT [sic] promised that the securities in the Trusts which were in the custody of FWTB would be treated with "the same degree and protection which [FWTB] gives its own property." The contract does not define what degree of protection FWTB gives to its own property or if FWTB would uphold industry standard duties of care in managing Plaintiffs' accounts such as, but not limited to, dealing in the best interest or sole interest of the clients.

**RESPONSE**:  Defendants admit the allegations in the first sentence of paragraph 41.  Defendants deny that the remaining allegations in paragraph 41 accurately or fully reflect the Investment Services and Custody Agreement, and refer to the Investment Services and Custody Agreement for its content.

42.     The standard of care assumed by FWTB pursuant to the contract was vague and non-specific. The written contract did not address any common law duties and there is no other basis in the contractual documents to say that the common law duties had been subsumed, eliminated, or modified by the written contract between FWTB, Bantis, Godfrey and the Plaintiffs.

**RESPONSE**:  Defendants deny the allegations in paragraph 42.

43.     FWTB, Bantis, and Godfrey, acting as fiduciaries, were bound by the common law duties of loyalty, prudence, care, good faith, and avoidance of self-dealing

in providing investment advisement services to Plaintiffs' accounts.

**RESPONSE**:  Paragraph 43 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 43.

44.     As a fiduciary, FWTB had without limitation the following general duties arising out of common law: duty of loyalty, duty to act with competence, and duty to avoid self-dealing.

**RESPONSE**:  Paragraph 44 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 44.

45.     Rather than managing the accounts to meet the needs of the Flecks and their Trusts, FWTB acted in a manner that benefitted itself.

**RESPONSE**:  Defendants deny the allegations in paragraph 45.

46.     There was no apparent investment strategy that was followed. Nevertheless, FWTB utilized the portfolio to engage in transactions resulting in management fees and mutual funds management fees. There was a significant level of transactions in the Trusts.

**RESPONSE**:  Defendants deny the allegations in the first two sentences in paragraph 46.  Defendants state that the third sentence is vague, and admit that there was turnover in the accounts, largely due to client instructions.

47.     In 2019, there was a complete portfolio change over in the Trusts. The complete change over from funds, ETF's and other alternate investments to a

compilation of individual securities for a good portion of the portfolio did not make sense, particularly given the Investment Policy Statement and the goals of the Flecks.

**RESPONSE**:  Defendants deny the allegations in paragraph 47, except they admit that there was some turnover in the accounts in 2019 due to client instructions.

48.      On December 2, 2018, Aaron Fleck realized there were major losses in both Trust portfolios in excess of $500,000. At that time, Aaron Fleck instructed FWTB to harvest the losses to offset other gains he had realized on other personal transactions. FWTB, Bantis, and Godfrey knew at the time that Fleck had capital gains in 2018 between $4 million to $5 million, from the sale of his home.

**RESPONSE**: Defendants lack sufficient information to admit or deny the allegations in the first sentence of paragraph 48 and deny them on that basis. Defendants deny the allegations in the second sentence of paragraph 48.

49.      FWTB failed to harvest losses as instructed Aaron Fleck.

**RESPONSE**: Defendants deny the allegations in paragraph 49.

50.      In fact, FWTB, in breach of its fiduciary duties, had no policy in place to address the harvesting of losses and no policy or procedure to contact customers regarding how to handle losses for customers, including Plaintiffs and others similarly situated.

**RESPONSE**:  Defendants deny the allegations in paragraph 50.

51.      Meanwhile, for several years of past portfolio management for class members, losses that were or could have been available to such class members were

ignored by FWTB resulting in damage to Plaintiffs and each class member.

**RESPONSE**:  Defendants deny the allegations in paragraph 51.

52.     In January 2019, FWTB acknowledged it had not followed Aaron Fleck's specific instructions and were at fault for not taking the losses for the tax year 2018 and allowed that it had instituted a new policy of harvesting short term capital losses, FWTB also acknowledged to Aaron Fleck that it had no policy or procedure to harvest capital losses in accounts it managed at the end of a tax year. Bantis, Godfrey, and two other bank officers admitted to Fleck that they had made a mistake by not taking short term losses.

**RESPONSE**: Defendants deny the allegations in paragraph 52.

53.     Ironically, it was the gross negligence and mismanagement by FWTB in handling the Trusts in the first place that created the capital losses. To compound that problem, because FWTB did not harvest losses, the Flecks were unable to use those losses when filing their 2018 tax returns resulting in damages to the Trusts and to the Flecks.

**RESPONSE**:  Defendants deny the allegations in paragraph 53.

54.     "Investment adviser" means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities. C.R.S. § 11-51-201(9.5)(a)(I); *see also* 15 USCS § 80b-2, Investment Advisors Act (herein after "IAA").

**RESPONSE**:  Defendants admit that paragraph 54 refers to the part of the definition of "Investment adviser" under the Investment Advisers Act of 1940.

55.     "Investment adviser" includes financial planners or other persons who, as an integral component of other financially related services, provide investment advisory services to others for compensation and as a part of a business or who hold themselves out as providing investment advisory services to others for compensation. *Id*. at (9.5)(a)(II).Upon information and belief, FWTB does not meet the requirements for exclusion from the IAA under C.R.S. § 11-51-201(9.5)(a)(II).

**RESPONSE**:  Defendants admit that paragraph 55 refers to the part of the definition of "Investment adviser" under the Investment Advisers Act of 1940. Defendants admit that FWTB is not registered as an investment adviser under the Investment Advisers Act of 1940, and does not hold itself out as one.

56.     As an investment advisor, FWTB is subject to both the IAA and C.R.S. 11-51-501, which makes it unlawful for an advisor to "[e]mploy any device, scheme, or artifice to defraud any client or prospective client" or to "engage in any transaction, practice, or course of business which operates as a fraud or deceit upon" any person. *See* 15 U.S.C.S. § 80b-6 (1) and (2); and C.R.S. § 11-51-501(a) and (c).

**RESPONSE**:  Defendants deny the allegations in paragraph 56.

57.     The federal and state Investment Advisor Acts also impose minimum standards on the behavior of investment advisors and imposes fiduciary duties upon investment advisors by operation of law. The purpose is to eliminate conflicts of interest and to prevent an advisor from overreaching and taking unfair advantage of the client's

trust.

> **RESPONSE**:  Defendants deny that the allegations in paragraph 57 accurately
> summarize the Investment Advisers Act of 1940 or corresponding Colorado law,
> and refer to the Investment Advisers Act and Colorado law for a full statement of
> the relevant statutes.

58.     FWTB failed to follow a coherent investment strategy and failed to adhere
to the investment strategy discussed and agreed to at the outset of FWTB's relationship
with the Flecks.

> **RESPONSE**:  Defendants deny the allegations in paragraph 58.

59.     FWB [sic] failed to follow clear and direct instructions to harvest losses in
2018 so they could be used against capital gains in that same year.

> **RESPONSE**:  Defendants deny the allegations in paragraph 59.

60.     In recognition of its willful and grossly negligent failure to have proper
procedures and safeguards in place to harvest losses, FWTB subsequently created
policies and procedures regarding harvest losses.

> **RESPONSE**:  Defendants deny the allegations in paragraph 60.

61.     FWTB willfully made investment decisions that were manipulative,
contrary to its fiduciary duties and designed and intended to generate and realize
management fees that would not have been necessary and could not have been
charged to the Trusts had they been managed properly by FWTB.

> **RESPONSE**:  Defendants deny the allegations in paragraph 61.

62.     FWTB's conduct was willful and grossly negligent resulting in damages to

the Trusts, the individual Plaintiffs and others similarly situated.

**RESPONSE**:  Defendants deny the allegations in paragraph 62.

63.     FWTB's conduct was also in bad faith breached its fiduciary duties and did not meet the reasonable expectations of Plaintiffs and others similarly situated.

**RESPONSE**:  Defendants deny the allegations in paragraph 63.

64.     The Flecks' damages include, without limitation, damages from failure to harvest short term losses, losses in their investment accounts due to FWTB's breaches of fiduciary duties, and attorney fees incurred in asserting their claims against FWTB.

**RESPONSE**:  Defendants deny the allegations in paragraph 64.

65.     The Flecks are also entitled to disgorgement of all fees and charges received by FWTB.

**RESPONSE**: Defendants deny the allegations in paragraph 65.

**FIRST CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(Plaintiffs' Individual and Class Action Claim Against Defendant FWTB)**

66.     All prior allegations of the Complaint are incorporated herein by this reference.

**RESPONSE**: Defendants' prior responses are incorporated herein by reference.

67.     Pursuant to C.R.C.P. 23(a) and (b), Plaintiffs bring this action on their own behalf and on behalf of the proposed class, of all similarly situated persons and entities nationwide consisting of all persons and entities who had accounts or portfolios consisting of assets managed by FWTB.

**RESPONSE**: Defendants admit that Plaintiffs attempted to bring this claim as a

class action on behalf of the stated class but deny that they are entitled to do so.

68.     Excluded from the class are: (a) any entity in which Defendant has a controlling interest, to include but not limited to, legal representatives, heirs, and successors; (b) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (c) and [sic] judicial officer in the lawsuit and/or persons within third degree of consanguinity to such Judge.

**RESPONSE**:  Defendants admit that Plaintiffs attempted to bring this claim as a class action on behalf of the stated class but deny that they are entitled to do so.

69.     Upon information and belief, the class consists of more than one hundred participants. Accordingly, it would be impractical to join all class members before the Court.

**RESPONSE**:  Defendants admit that the proposed class consisted of more than one hundred participants, but deny that class certification is appropriate.

70.     Common questions of law and fact exist as to all members of the proposed class and predominate over questions affecting only individual class members. These common questions of law and fact will be shown through common evidence include:

a.   Whether FWTB breached its fiduciary duties to Plaintiffs and class members by having no policy to address harvesting of capital losses;

> b.   Whether FWTB knew or should have known that losses would occur in accounts it was managing and that such losses could be harvested and used to offset gains in the same tax year; and
>
> c.   Whether FWTB acted in a grossly negligent manner and willful manner failing to have any policies or procedures in place to harvest losses occurring in Plaintiffs' and class members' accounts.

**RESPONSE**:  Defendants deny the allegations in paragraph 70.

71.     The claims of Plaintiffs are typical of the claims of class members, in that they share the above-referenced common facts and legal claims, there is a sufficient relationship between the damage to Plaintiffs and Defendants' conduct affecting class members, and Plaintiffs have no interest adverse to the interests of other class members.

**RESPONSE**:  Defendants deny the allegations in paragraph 71.

72.     Plaintiffs will fairly and adequately protect the interests of class members and have retained counsel experience and competent in the prosecution of complex class actions.

**RESPONSE**:  Defendants deny the allegations in paragraph 72.

73.     FWTB has acted or refused to act on grounds generally applicable to the class.

**RESPONSE**:  Defendants deny the allegations in paragraph 73.

74.     The questions of law and fact, to the members of the class predominate over any questions affecting only individual members, if any.

**RESPONSE**:  Defendants deny the allegations in paragraph 74.

75.     Defendants' breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing and gross negligence will be shown through common evidence.

**RESPONSE**:  Defendants deny the allegations in paragraph 75.

76.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because: (i) there has been no interest shown of members of the class in individually controlling the prosecution of separate actions; (ii) Plaintiffs are aware of no other litigation concerning the controversy already commenced on behalf of the members of the class; (iii) it is desirable to concentrate the litigation in this form, which is familiar to both Plaintiffs and Defendants; and (iv) there are no difficulties likely to be encountered in the management of this class action. The fiduciary duties undertaken by FWBT [sic] arise from its services as an investment advisor and asset manager and are not related or defined by the Investment Agreement which merely promised to treat Plaintiffs' Property with the same general undefined protection that it employs for its property but did not incorporate fiduciary duties.

**RESPONSE**:  Defendants deny the allegations in paragraph 76.

77.     FWTB undertook to act as a fiduciary and did so act in managing the assets of the class members.

**RESPONSE**:  Defendants deny the allegations in paragraph 77.

78.     FWTB held itself out as an investment advisor, including to members of the class, to provide experienced trust investment management services.

**RESPONSE**: Defendants admit that FWTB's trust department, at times, states it

can act as an investment adviser, but deny that FWTB holds itself out as an

"Investment adviser" as that the term is used in the Investment Advisers Act of

1940.

79.    FWTB held itself out as a fiduciary to its investors, including class

members, and advertised that its services in trust and wealth management teams "are

held to a fiduciary standard."

**RESPONSE**: Defendants admit the allegations in paragraph 79, but note that the

Investment Services and Custody Agreement defines the scope of FWTB's

fiduciary duties owed to Plaintiffs.

80.    FWTB was bound by fiduciary duties to the class members including, and

without limitation, the duty of loyalty, duty to act with competence, good faith, and duty

to avoid self-dealing.

**RESPONSE**: Defendants admit that FWTB had fiduciary duties to certain

putative class members, as defined by the underlying contract between FWTB

and any client, but otherwise deny the allegations in paragraph 80.

81.    FWTB breached its fiduciary obligations as alleged herein by failing to

have policies or procedures in place to harvest losses at the end of a tax year, and by

failing to harvest losses at the end of a tax year.

**RESPONSE**: Defendants deny the allegations in paragraph 81.

82.    FWTB's contracts did not and could not have subsumed FWTB's fiduciary

duties to the class members regarding harvesting losses because FWTB had no

policies, procedures, or practices of harvesting losses to protect the class members

**RESPONSE**: Defendants deny the allegations in paragraph 82.

83.     FWTB's actions, which constituted a breach of its fiduciary duties, involved

willful misconduct and gross negligence.

**RESPONSE**: Defendants deny the allegations in paragraph 83.

84.     As a direct and proximate result of FWTB's breaches of fiduciary duty,

Plaintiffs have been damaged in an amount to be determined at trial.

**RESPONSE**:  Defendants deny the allegations in paragraph 84.

**SECOND CLAIM FOR RELIEF**
**Fraudulent Inducement**
**(Plaintiffs' Individual Claim Against Defendants FWTB, Bantis, and Godfrey)**

85.     All allegations of the Complaint are incorporated herein by this reference.

**RESPONSE**:  Defendants' responses are incorporated herein by reference.

86.     Between and including February 2018 to May 2018, FWTB, Bantis, and

Godfrey conveyed false information to Plaintiffs in regard to their qualifications,

approach, and procedures for managing their fiduciary accounts.

**RESPONSE**:  Defendants deny the allegations in paragraph 86.

87.     FWTB advertised that its trust investment management service teams

could also serve as an investment advisor for trust accounts, including Plaintiffs'

accounts.

**RESPONSE**:  Defendants admit the allegations in paragraph 87, except that they

deny that FWTB used the term "investment advisor" to refer to an "Investment

adviser" under the Investment Advisers Act of 1940.

88.     FWTB, Bantis, and Godfrey engaged in a practice, or course of business which operated as a fraud or deceit upon" the Plaintiffs by misrepresenting that the accounts would be managed by both Registered Investment Advisors or professional money managers.

**RESPONSE**:  Defendants deny the allegations in paragraph 88.

89.     FWTB, Bantis, and Godfrey knew at the time the Plaintiffs were induced to invest with the Defendants and when they entered into the contracts in this case that the Plaintiffs' accounts would not be managed by Registered Investment Advisors or professional money managers.

**RESPONSE**:  Defendants admit that they knew that FWTB was not a registered investment adviser and did not employ registered investment advisers, but deny the remaining allegations in paragraph 89.

90.     FWTB, Bantis, and Godfrey intended for Plaintiffs to rely upon the false information in entrusting their fiduciary accounts to FWTB.

**RESPONSE**:  Defendants deny the allegations in paragraph 90.

91.     The misrepresentations made to Plaintiffs were material.

**RESPONSE**:  Defendants deny the allegations in paragraph 91.

92.     Plaintiffs reasonably relied on the false information provided by FWTB, Bantis, and Godfrey, orally and in writing, in entrusting their fiduciary accounts to FWTB.

**RESPONSE**:  Defendants deny the allegations in paragraph 92.

93.     Had Plaintiffs been aware of the true facts that their accounts would not be managed by Registered Investment Advisors and professional money managers, and the

management of their accounts would be done in a haphazard manner without a coherent

investment strategy, they would not have entrusted their fiduciary accounts to FWTB.

**RESPONSE**:  Defendants deny the allegations in paragraph 93.

94.     Plaintiffs justifiably relied on FWTB's, Bantis's, and Godfrey's

misrepresentations.

**RESPONSE**:  Defendants deny the allegations in paragraph 94.

95.     As a result of their justifiable reliance, Plaintiffs sustained damages

representing the difference between the performance of their accounts and the return

they would have received, had their accounts been managed by competent RIA's and

professional money managers, as well as paying FWTB excess fees. Plaintiffs have

also sustained damages in the attorney fees they must incur in bringing this lawsuit.

**RESPONSE**:  Defendants deny the allegations in paragraph 95.

### THIRD CLAIM FOR RELIEF
**Fraudulent Concealment/Non-Disclosure**
**(Plaintiffs' Individual Claim Against Defendants FWTB, Bantis, and Godfrey)**

96.     All allegations of the Complaint are incorporated herein by this reference.

**RESPONSE**:  Defendants' responses are incorporated herein by reference.

97.     In 2018 FWTB was retained to manage accounts as a fiduciary.

**RESPONSE**:  Defendants admit the allegations in paragraph 97.

98.     Based upon the fiduciary relationship in which FWTB induced the Flecks

to enter, FWTB, Bantis, and Godfrey had a duty to disclose material facts relating to

their credentials and approach to the management of Plaintiffs' fiduciary accounts.

**RESPONSE**:    Defendants admit the allegations in paragraph 98.

99.     Further, consistent with C.R.S. 11-51-302(2) "It is unlawful to make, or cause to be made, to any prospective purchaser or to any existing or prospective customer or client any representation" unlawful representation concerning a license, registration, or exemption. Between and including February 2018 and May 2018 FWTB, Bantis, and Godfrey failed to disclose the material facts that Plaintiffs' fiduciary accounts would not be managed by registered investment advisors or professional money managers and that FWTB would not pursue a cohesive considered approach in managing the Flecks' accounts.

**RESPONSE**:  Defendants admit the first sentence in paragraph 99 refers to C.R.S. 11-51-302(2).  Defendants deny the allegations in the second sentence.

100.    The concealed facts were material.

**RESPONSE**:  Defendants deny the allegations in paragraph 100.

101.    The facts were concealed with the intention of creating a false impression of the actual facts in the Flecks' minds.

**RESPONSE**:  Defendants deny the allegations in paragraph 101.

102.    Plaintiffs' decision to place their fiduciary accounts with FWTB was based upon their belief that FWTB's money managers were Registered Investment Advisors and credentialed professional money managers who would employ a cohesive and considered strategy to the management of Plaintiffs' accounts, considering their age and investment objectives.

**RESPONSE**: Defendants deny the allegations in paragraph 102.

103.    At no time after the Plaintiffs placed their fiduciary accounts with FWTB in

May of 2018 until the Plaintiffs removed their accounts in 2019 did FWTB, Bantis, and Godfrey disclose the material facts that Plaintiffs' fiduciary accounts would not be managed by Registered Investment Advisors or professional money managers and that FWTB would not pursue a cohesive considered approach in managing the Flecks' accounts.

**RESPONSE**:  Defendants deny the allegations in paragraph 103.

104.    The true facts were that FWTB's personnel who managed the Flecks' accounts were neither Registered Investment Advisors, nor professional money managers, they had no cohesive investment strategy, and the investments they made had no rhyme or reason.

**RESPONSE**:  Defendants admit that FWTB was not a registered investment adviser and deny the remaining allegation in paragraph 104.

105.    Plaintiffs entrusted their fiduciary accounts to FWTB, justifiably relying on the assumption that their accounts would be managed by professional money managers employing a cohesive investment strategy.

**RESPONSE**:  Defendants lack sufficient information to admit or deny the allegations in paragraph 105 and deny them on that basis.

106.    Had Plaintiffs been aware of the true facts, they would not have employed FWTB to manage their fiduciary accounts.

**RESPONSE**:  Defendants deny the allegations in paragraph 106.

107.    Plaintiffs' reliance on the belief that FWTB employed credentialed money managers who would properly manage their fiduciary accounts was justifiable.

**RESPONSE**:  Defendants admit the allegations in paragraph 107.

108.    Plaintiffs sustained damage because of their justifiable reliance that the concealed facts were not different from what they reasonably believed the true facts to be.

**RESPONSE**:  Defendants deny the allegations in paragraph 108.

109.    Further, as Plaintiffs are a Trust, they are entitled to recover their attorney fees, in this action to preserve the corpus of the Trust.

**RESPONSE**:  Defendants deny the allegations in paragraph 109.

### FOURTH CLAIM FOR RELIEF
**Breach of Fiduciary Duty**
**(Plaintiffs' Individual Claim Against FWTB)**

110.    All prior allegations of the Complaint are incorporated herein by this reference.

**RESPONSE**: Defendants incorporate their prior allegations herein by reference.

111.    FWTB undertook to act as a fiduciary in managing over $8 million in assets for and on behalf of Plaintiffs.

**RESPONSE**: Defendants admit the allegations in paragraph 111, and state that FWTB's fiduciary duties are defined by the Investment Services and Custody Agreement.

112.    FWTB's fiduciary duties arise out of the common law including duties of loyalty, duty to act with competence, and duty to avoid self-dealing. Some of these duties have also been codified in the IAA and C.R.S. 11-51-201 which set minimum standards of care and do not preempt FWTB's common law fiduciary duties of care.

**RESPONSE**: Defendants deny the allegations in paragraph 112.

113.    The fiduciary duties undertaken by FWBT [sic] arise from its services as an investment advisor and asset manager and are not related or defined by the Investment Agreement which merely promised to treat Plaintiffs' Property with the same general and undefined protection that it employs for its property but did not incorporate fiduciary duties.

**RESPONSE**: Defendants deny the allegations in paragraph 113.

114.    FWTB breached its fiduciary duties as alleged herein by, among other things, failing to pursue a cohesive investment strategy, initiating transactions to generate management fees where a reasonably prudent fiduciary would not do, failing to follow the instructions of the Flecks regarding harvesting losses, and failing to have policies or procedures in place to allow for the harvesting of losses.

**RESPONSE**:  Defendants deny the allegations in paragraph 114.

115.    FWTB also breached its fiduciary duties by failing to exercise the level of care that a reasonable investment advisor would provide in managing Plaintiffs' Trust account.

**RESPONSE**:  Defendants deny the allegations in paragraph 115.

116.    FWTB's failure to harvest the losses after Plaintiffs' request to do so violated their fiduciary duties loyalty, competence, good faith, and avoidance self-dealing.

**RESPONSE**:  Defendants deny the allegations in paragraph 116.

117.    FWTB's actions, which constituted a breach of its fiduciary duties, involved

willful misconduct, and gross negligence in the management of their fiduciary accounts.

**RESPONSE**:  Defendants deny the allegations in paragraph 117.

118.    As a direct and proximate result of FWTB's breaches of fiduciary duty,

Plaintiffs have been damaged in an amount to be determined at trial.

**RESPONSE**: Defendants deny the allegations in paragraph 118.

**FIFTH CLAIM FOR RELIEF**
**Breach of Contract**
**(Plaintiffs' Individual Claim Against FWTB)**

119.    All prior allegations of the Complaint are incorporated herein by this

reference.

**RESPONSE**: Defendants' prior responses are incorporated herein by reference.

120.    The Trusts entered into a contractual relationship with FWTB.

**RESPONSE**: Defendants admit the allegations in paragraph 120.

121.    The contract for each Trust was in the form of: (1) an Investment Policy

Statement; (2) Fee Schedule Agreement; (3) Investment Services and Custody

Agreement; and (4) a New Account Information Form.

**RESPONSE**: Defendants admit the allegations in paragraph 121.

122.    The contract between FWTB and the Trusts gave FWTB full discretion,

including that of "attorney-in-fact" to act for the Trustees in carrying out their obligations

**RESPONSE**: Defendants admit that paragraph 122 refers to the Investment

Services and Custody Agreement, but deny that it accurately or fully reflects its terms.

123.    The contracts also gave discretion to FWTB to pay itself for management

fees and expenses.

**RESPONSE**: Defendants admit that paragraph 123 refers to the Investment Services and Custody Agreement and Fee Agreement, but deny that it accurately or fully reflects its terms.

124.    The contracts provided that the securities in the Trusts which were in the custody of FWTB would be treated with "the same degree and protection which [FWTB] gives its own property."

**RESPONSE**: Defendants admit that paragraph 124 refers to the Investment Services and Custody Agreement, but deny that it accurately or fully reflects its terms.

125.    The contracts between FWTB and the Trusts imposed limited and specified fiduciary obligations on FWTB including the duty to disclose. The contracts did not contemplate nor address other fiduciary obligations of FWTB such duties of loyalty, prudence, care, good faith, or avoidance of self-dealing.

**RESPONSE**: Defendants admit that the Investment Services and Custody Agreement defines the scope of FWTB's fiduciary duties owed to the Trusts, but deny the remaining allegations in paragraph 125.

126.    In failing to provide review services as indicated in its contracts, FWTB failed to comply with its minimal contractual obligations.

**RESPONSE**: Defendants deny the allegations in paragraph 126.

127.    Transactions in the Trust accounts were designed to and did generate management fees one would not reasonably expect in the prudent management of trust assets, and beyond those one would expect in handling its own property. Such conduct

was also in violation of FWTB's contractual duties.

> **RESPONSE**: Defendants admit that certain transactions in the Trust accounts generated fees, but deny the remaining allegations in paragraph 127.

128.    FWTB breached its contract with the Trusts by willfully making unnecessary transactions in order to create management fees, ignoring specific instructions from the Trusts and their trustees regarding harvesting losses, and failing to have a policy in place to harvest losses, and failing to fully inform Plaintiffs of their conduct, failing to review investments with Plaintiffs, and failing to productively invest Plaintiffs' money.

> **RESPONSE**: Defendants deny the allegations in paragraph 128.

129.    FWTB was able to engage in the contract alleged herein because it had been given total discretion to manage the Trusts.

> **RESPONSE**: Defendants deny the allegations in paragraph 129, and refer to the Investment Services and Custody Agreement and Investment Policy Statement for the terms of discretion FWTB had.

130.    FWTB's actions, which constituted a breach and bad faith breach of its contractual obligations, involved willful misconduct.

> **RESPONSE**: Defendants deny the allegations in paragraph 130.

131.    As a direct and proximate result of FWTB's breaches of contract as alleged herein, the Trusts have been damaged in an amount to be determined at trial.

> **RESPONSE**: Defendants deny the allegations in paragraph 131.

## **AFFIRMATIVE DEFENSES**

Defendants assert the following affirmative defenses:

1.      Plaintiffs fail to state a claim upon which relief may be granted.

2.      Plaintiffs fail to plead fraud with particularity.

3.      Plaintiffs' first, second, third, and fourth claims are barred by Colorado's economic loss rule

4.      Plaintiffs cannot show bad faith, gross negligence, or willful misconduct, which is a prerequisite to liability under the Investment Services and Custody Agreement.

5.      Plaintiffs lack standing to assert their claims because the Aaron H. Fleck Revocable Trust and the Barbara G. Fleck Revocable Trust have been dissolved and no longer exist, and Aaron H. Fleck and Barbara G. Fleck were not parties to the contracts alleged to have been breached.

6.      Plaintiffs failed to mitigate their damages, if any.

7.      Plaintiffs have not suffered damages, and actually benefitted from the allegedly wrongful conduct.

Dated: February 27, 2023.

/s/ Adam B. Stern

BRYAN CAVE LEIGHTON PAISNER LLP
Timothy R. Beyer
Adam B. Stern
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Telephone: (303) 861-7000
tim.beyer@bclplaw.com
adam.stern@bclplaw.com

*Attorneys for Defendants First Western Trust Bank, Charles Bantis, and Andrew Godfrey*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 27th day of February, 2023 a true and correct copy of **DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT** was filed and served using the CM/ECF system, on the following:

PODOLL & PODOLL, P.C.
Richard B. Podoll
rich@podoll.net
Robert Kitsmiller
bob@podoll.net
Jacqueline E. Hill
jacqui@podoll.net

*Attorney for Plaintiffs*

*/s/ Adam B. Stern*
Adam B. Stern