IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Gordon P. Gallagher

Civil Action No. 21-cv-01073-CMA-GPG

THE AARON H. FLECK REVOCABLE TRUST,
THE BARBARA G. FLECK REVOCABLE TRUST,
AARON H. FLECK, and
BARBARA G. FLECK,

      Plaintiffs,

v.

FIRST WESTERN TRUST BANK,
CHARLES BANTIS, and
ANDREW GODFREY,

      Defendants.

---

## ORDER ADDRESSING ADDITIONAL EXPERT DISCOVERY AND AFFIRMATIVE DEFENSES

---

This matter is before the Court concerning the Court's February 28, 2023 Minute Order (D. 73),[1] which invited the parties to submit additional briefing regarding their positions on certain matters. The Court has considered the parties briefs (D. 74-77) and the entire record in this case.

Some history is necessary to a full understanding of the issues presented. The Plaintiffs commenced this action in April 2021, asserting claims for breach of fiduciary duty, breach of contract, and fraud arising from the Defendants' alleged mismanagement of the Plaintiffs' trusts. The Plaintiffs' Amended Complaint (D. 18) included class action allegations on behalf of a

---

[1]     Citations in the form of (D. __) refer to the specified docket number in the Court's electronic docket records.

1

putative class of similarly-situated individuals whose accounts were similarly mismanaged by the Defendants.

On June 3, 2021, this Court conducted a Scheduling Conference and issued a Scheduling Order (D. 25).  That Order recited the Plaintiffs' position regarding expert witnesses:

> Plaintiffs' industry expert will provide testimony regarding industry standards to have have [certain] policies in place, as well as issues relating to class certification.  Because Plaintiffs anticipate calling one expert to address class action issues as well as the merits, there is no reason for a protracted bifurcated class certification procedure.

(D. 25 at 7-8).  In proposing a discovery plan, the Plaintiffs asserted that they "anticipate retaining an expert on industry standards and a second expert on damages."  They proposed that expert witness designations be completed by February 2022.  *Id.* at 8.  The Defendants proposed a bifurcated class certification process and suggested "class certification expert" disclosure be completed by January 2021, and suggested that "discovery on the merits of the Plaintiffs' claims" would be "deferred until after the Court's resolution" of any class certification issue.  *Id.* at 10-11.  At that point, the Defendants proposed a six month merits discovery period, including expert disclosures and depositions occurring during this second phase.  *Id.* at 11.  Resolving those disputes, the Court explained that it was directing "a hybrid approach of moving forward simultaneously with merits discovery as to the underlying case and class certification discovery but NOT merits discovery on the class claim(s)."  It set the following deadlines:

- Discovery "relating to [the] motion for class certification and merits discovery as to the underlying matter but not class discovery" was to conclude by December 18, 2021.

- The deadline for "class certification expert reports" was December 21, 2021, and the deadline "to depose class certification experts" was February 4, 2022.

> • The Court states that it would "address deadlines, numbers of experts, and disclosure dates for merits experts upon determination of [ ] class certification."

D. 25 at unnumbered page (page 12 in the docketed version). On February 16, 2022, the Court entered an Amended Scheduling Order (D. 46) that extended the deadlines for "class certification expert[s]" listed above and repeated the intention to "address . . . disclosure dates for merits experts" once the class certification issue was resolved.

On December 27, 2022, Judge Arguello denied (D. 70) the Plaintiffs' motion for class certification. This Court scheduled a Status Conference for February 28, 2023 to address the progress of the case. On February 27, 2022, the Defendants filed their Answer (D. 72) to the Amended Complaint.[2] That Answer asserted several affirmative defenses, although only one, "failure to mitigate," is an actual <u>affirmative</u> defense. The remaining defenses – *e.g.* "failure to state a claim," "failure to plead fraud with particularity," "lack of standing," etc. – are matters on which the Plaintiffs bear the burden of proof.

At the February 28, 2023 Status conference, the parties addressed two issues: (i) whether there should be further time granted for designations of expert witnesses and expert discovery as it relates to the Plaintiffs' remaining claims; and (ii) whether the Defendants' recently-filed Answer is timely and, if not, what action should be taken with regard to that filing. (D. 73). The Court invited the parties to submit briefs addressing those issues, and the parties have done so. Advised by those briefs and upon its review of the record, the Court now addresses the two disputes.

---

[2] The Defendants had filed a timely Fed. R. Civ. P. 12 motion (D. 21) in response to the Plaintiffs' Amended Complaint, thereby staying the time to file an Answer in accordance with that rule. Judge Arguello denied (D. 50) that motion on March 23, 2022. Under Rule 12, the Defendants' Answer was thus due 14 days later. Fed. R. Civ. P. 12(a)(4)(A).

### 1. Additional Expert Discovery

Consistent with the Schedule Order's intention that the parties engage in discovery concerning the Plaintiffs' individual (*i.e.* non-class) claims, it is undisputed that the parties have already engaged in significant expert discovery. The Plaintiffs designated Joseph Rulison as an expert and Mr. Rulison issued a report. (D. 76-1). Although the Defendants contend that Mr. Rulison's report addresses "Plaintiffs' individual claims and damages," this Court's review of that report does not reveal Mr. Rulison opining with any specificity as to the Plaintiffs' damages. The Defendants fully deposed Mr. Rulison as to his opinions. The Defendants designated their own experts, Robert Reidy to address the merits of the Plaintiffs' contentions, and Jon Ahern to respond to Mr. Rulison's determinations regarding damages. (Mr. Ahern's report expressly criticizes Mr. Rulison for not "provid[ing] any analysis" of damages "other than a discussion around the purpose of tax harvesting" and contends that Mr. Rulison's "damages opinions . . . are unsupported and are not based on an appropriate methodology for evaluating economic damages." D. 76-4 at 4-5). The Plaintiffs deposed Mr. Reidy regarding his report, but cancelled a scheduled deposition of Mr. Ahern and never rescheduled it.

In their brief, the Plaintiffs request an opportunity to engage in additional expert designations and discovery. Specifically, the Plaintiffs appear to concede that they intend to rely on Mr. Rulison as their sole expert on liability, but they indicate their intention to retain an additional expert on the issue of damages, explaining that "the selection of a damage expert and the scope of engagement would be vastly different if the class had been certified." The Plaintiffs also indicate that they intend to retain a third expert, "an attorney who is either a trust officer or who has significant experience in representing and advising bank trust departments," to address a single comment made by the Defendant bank's president, Charles Bantis, during a deposition. In

that comment, Mr. Bantis seemed to testify that, despite owning fiduciary duties to a client, the bank could be entitled to place its own interests before that of the client in circumstances that may prove "detrimental to the institution."

This Court finds that the Scheduling Order was ambiguous with regard to expert discovery on the Plaintiffs' non-class claims. On the one hand, the Court indicated its intention to have the parties "mov[e] forward simultaneously with merits discovery" alongside class certification discovery, deferring discovery (both fact and expert) as to only <u>class claim(s)</u> until after class certification was resolved. That language suggests that experts relating to the Plaintiffs' individual, non-class claims should have proceeded apace, and indeed, it appears that the parties understood that to be the case and they conducted the majority of the expert discovery they intend to use in this case already. At the same time, the Scheduling Order does indeed indicate that the Court would "address deadlines, numbers of experts, and disclosure dates for <u>merits experts</u>" after class certification was resolved, clearly indicating that some degree of "merits experts" discovery might remain to be conducted. It was the Court's intention that this language existed to address the possibility that some form of class certification would be granted, which might then require more extensive expert discovery than the parties had engaged in when addressing the Plaintiffs' individual claims, and the complete denial of class certification has rendered that possibility moot.

Nevertheless, the Court is persuaded by the Plaintiffs' argument that they delayed identifying a specific damages expert until the class certification issue was resolved because the scope of damages on the Plaintiffs' individual claims would be very different from the damages that a class would assert. In such circumstances, discovery undertaken on the damages for the Plaintiffs' individual claims might have been rendered unnecessary if a class had been certified.

**5**

Thus, it may have been prudent for the Plaintiffs to defer designating a damages expert until now. The Court does not read Mr. Rulison as offering any particular opinions on the Plaintiffs' actual damages and Mr. Ahern's report makes clear that he does not either. Thus, as it pertains to the issue of the Plaintiffs' damages, there is little risk that allowing the Plaintiffs an opportunity to designate a damages expert will unnecessarily duplicate discovery that has already occurred.

Accordingly, the Court grants leave to the Plaintiffs to identify an expert to testify specifically (and exclusively) with regard to the damages the Plaintiffs incurred as a result of the Defendants' improper conduct. To minimize disruption and delay in this case, the Court will require that discovery relating to this expert be expedited as follows:

- The Plaintiffs shall identify this expert and provide a report on or before **May 1, 2023**.

- The Defendants may depose that expert by **June 1, 2023**.

- The Defendants may either choose to rely on Mr. Ahern and his existing report as their rebuttal on the issue of damages, or they may elect to designate a new rebuttal expert or supplement Mr. Ahern's report.

  If the Defendants choose to rely on Mr. Ahern's existing report, the Court finds that the Plaintiffs have waived the opportunity to depose Mr. Ahern by not seeking to reschedule his deposition promptly. In that circumstance, the Defendants shall advise the Plaintiffs by **May 15, 2023** that they will rest on Mr. Ahern's existing report and no further discovery regarding Mr. Ahern will be appropriate.

  If, on the other hand, the Defendants intend to designate a new expert or supplement Mr. Ahern's report, they shall make that designation and provide a rebuttal report by **June 1, 2023**, and the Plaintiffs shall have until **July 1, 2023** to depose the Defendants' rebuttal expert.

As to the Plaintiffs' request to designate an additional expert to respond to the deposition testimony of Mr. Bantis, the Court denies that request. The Plaintiffs had an ample opportunity to explore Mr. Bantis' reasons for his statements during his deposition. As the Defendants point out, Mr. Bantis had given that testimony back on March 3, 2022, before Mr. Rulison had rendered any opinions. Mr. Rulison specifically identifies Mr. Bantis' deposition testimony as material he reviewed in formulating his report. To the extent the Plaintiffs wish to have Mr. Rulison or any other expert address Mr. Bantis' testimony, they had an ample opportunity before now to designate that expert. This is unlike the situation like that of the damages expert, where a yet-to-occur intervening event (*i.e.* the ruling on the class certification motion) was a necessary predicate before the Plaintiffs could obtain a meaningful expert's analysis. Accordingly, because the Court finds that the Plaintiffs unnecessarily delayed designating or seeking to designate an expert to address Mr. Bantis' testimony, leave to designate such an expert at this time would be inappropriate.

### 2. The Defendants' Untimely Answer and Affirmative Defenses

As discussed above, the Defendants' Answer was due in early April 2022, but the Defendants did not file it until February 2023. The Plaintiffs indicate that they do not object to the untimely filing of the Answer itself, but do object to the Defendants' late assertion of numerous affirmative defenses. They imply that the defenses should be stricken or, in the alternative ("to the extent the affirmative defenses are permitted..."), that they be permitted to reopen discovery to address those defenses. In response, the Defendants do not offer any explanation for their late Answer and they contend that discovery should not be reopened as to the defenses because there is no meaningful information to discover about these defenses that has not already been addressed by the parties.

The Court finds it appropriate to strike the Defendants' affirmative defenses. No good cause has been shown for the Defendants' failure to timely assert them. As to most of the defenses, the striking of them is nothing but a symbolic act because most of the defenses are not "affirmative" at all and striking them will have no effect on dispositive motions or trial in this case. The only defense on which the Defendants would bear the burden of proof is their defense of failure to mitigate, as the Defendants would bear the burden of proving the actions that the Plaintiffs should have taken to minimize their damages. *United Intl. Holdings, Inc. v. Wharf (Holdings), Ltd.*, 210 F.3d 1207, 1230 (10th Cir. 2000). The Court finds that if the Defendants were permitted to assert the defense of failure to mitigate, it would be appropriate to reopen discovery to allow the Plaintiffs an opportunity to explore what steps the Defendants contend the Plaintiffs should have taken and the extent to which the Defendants believe those steps would have been effective. That reopening of discovery would be prejudicial to the Plaintiffs, causing them to incur additional time and expense, and to the Court, as it would delay further progress towards dispositive motions and trial. Accordingly, the Court finds it appropriate to strike the Defendants' untimely affirmative defenses.

**3. Dispositive motion deadline**

With all other discovery having closed (except as set forth above), the sole remaining matter to be addressed is the setting of a deadline for dispositive motions. The limited expert discovery permitted above does not appear to have any effect on the parties' ability to file dispositive motions, and thus, the Court finds it appropriate to require the parties to address dispositive motions at this time. Accordingly, the Court sets **May 15, 2023** as the deadline for filing dispositive motions.

For the foregoing reasons, the Court:

• grants in part and denies in part the Plaintiffs' request to designate additional experts and conduct additional expert discovery, allowing the Plaintiffs an opportunity to designate a damages expert on the terms set forth herein, and denying the Plaintiffs' request to designate an expert to respond to Mr. Bantis' testimony;

• strikes the Defendants' untimely affirmative defenses asserted in the Answer; and

• sets **May 15, 2023** as the deadline for the filing of dispositive motions.[3]

Dated at Grand Junction, Colorado this March 22, 2023.

**Gordon P. Gallagher**
United States Magistrate Judge

---

[3] Pursuant to 28 U.S.C. §636(b)(1)(A) and Fed. R. Civ. P. 72(a), any objections to this Order must be filed within 14 days of service.