

## FIRSTWestern
### TRUST

### Investment Services and Custody Agreement

THIS AGREEMENT ("Agreement") is between the undersigned ("Client") and First Western Trust Bank ("FWTB"). Client and FWTB agree that all assets ("Client Assets") deposited in this account ("Account") shall be managed and administered according to the following provisions of this Agreement:

1. **Effective Date**

   This Agreement, and all collateral agreements contemplated hereby, shall become effective commencing on the date of execution and include the first full calendar quarter thereafter. The term "full calendar quarter" means a calendar quarter which begins following the Client's delivery of the Managed Assets.

2. **Authority of FWTB**

   FWTB is empowered to do all things necessary or convenient for the administration of this account. Without limiting this general power, it shall include the following powers and discretions, in addition to those provided by law:

   a) **Acceptance of Assets:** FWTB shall receive in accordance with this Agreement, such cash, securities and other property that may from time to time be delivered to FWTB by or for the account of Client. FWTB is not obligated to accept and hold assets that it deems to be inappropriate including, but not limited to, real estate or tangible personal property.

   b) **Custody and Safekeeping:** With respect to all assets in the Account, FWTB agrees to keep all assets safely; collect all dividends, interest, other income and the proceeds of sales and redemptions on assets; and distribute net income and principal as directed by Client. FWTB is authorized to sign any certificates and declarations reasonably necessary or convenient for the collection of dividends, interest or income on assets held in the Account. FWTB is authorized to hold assets in the Account in the name of its nominee(s), registered in the name of the Client or in bearer form.

   c) **Transactions:** FWTB shall have the authority to execute orders to clear the purchase or sale of any securities upon Client or designated third party instructions; sell or buy fractions of shares to equal whole shares; and hold assets in the name of a nominee or in bearer form; all as FWTB, in its sole discretion, may deem proper unless Client or designated third party shall have previously directed otherwise.

   d) **Voting Authority, Corporate Action:** Client authorizes FWTB or its designated third party to act with respect to proxies, warrants, tenders, rights, options, puts, calls, class action filings, consents or other securities or actions affecting the Account. FWTB has adopted and implemented written policies and procedures that it believes are reasonably designed to ensure that proxies are voted in the best interest of clients in those cases where a client has contractually given proxy voting responsibility to FWTB. Votes are cast in accordance with FWTB's fiduciary duties and SEC Rule 206(4)-6 under the Investment Advisers Act of 1940. The proxy voting guidelines have been tailored to reflect these rules and the long-standing fiduciary standards and responsibilities for ERISA accounts set out by the Department of Labor.

   FWTB has contracted BMO Harris Bank N.A., to handle administration and voting of client proxies. BMO will vote all proxies in the manner that, in the best judgment of BMO is in the best economic interests of FWTB's clients. BMO addresses potential material conflicts of interest by having a predetermined voting policy ("Policy"). For those proposals that require case-by-case determinations, or in instances where special circumstances may require varying from the predetermined Policy, the Proxy Officer will determine the vote in the best interests of FWTB's clients, without consideration of any benefit to BMO, its affiliates, its employees, it's other clients, customers, service providers or any other party.

FIRSTWestern
TRUST

A Proxy Officer will be designated by the BMO Trust Investment Committee who will have the authority to direct the vote on proposals that require case-by-case determinations or where there has been a recommendation not to vote in accordance with the predetermined Policy. In determining the vote on any proposal for which the Proxy Officer has responsibility, the Officer shall at all times, act in accordance with and pursuant to the Policy.

The Proxy Officer will report to the Trust Investment Committee. The Trust Investment Committee will conduct a periodic review of the Policy to ensure consistency with internal policies and regulatory requirements and develop additional guidelines to assist in the review of proxy proposals. The Trust Investment Committee will also develop and revise further procedures to BMO in the voting of proxies pursuant to the Policy, which may include the use of a third party vendor for purposes of recommendations on particular shareholder votes being solicited, voting of proxies and/or recordkeeping.

Additional information regarding proxy voting policies and procedures can be obtained by contacting your relationship manager. Clients may also request information on votes cast by making a request to their relationship manager by phone or FWTB's mailing address. FWTB shall provide voting procedures to Client upon request.

e) **Conditional Credit:** FWTB may, but is not required to, credit the Account conditionally on the payable date with interest, dividends, distributions, redemptions or other amounts due. If FWTB is instructed to deliver securities or other property against payment, FWTB may deliver them before receiving payment and credit the account with anticipated proceeds. Otherwise, FWTB will credit these amounts to the Account on the date of actual receipt and reconcile them to the account. If FWTB has credited the Account with an amount before collection, FWTB is entitled to recover any credit from Client and FWTB may reverse the credit as of payable or settlement date if and to the extent FWTB does not receive these amounts in the ordinary course of business.

f) **Selection of Agents:** FWTB is authorized to retain and employ such agents as it deems appropriate including accountants, attorneys or other agents. FWTB will not be liable for acting in good faith in accordance with the reasonable advice and consultation of such agents.

3. **Discretionary Investment Authority**

Client hereby grants to FWTB, full and complete discretion and authority with respect to managing the investment of Client's Assets. This appointment includes that of agent and attorney-in-fact with full discretionary power and authority without implied limitation to purchase, sell, exchange, convert, trade and generally to deal in securities and property comprising the Client's Assets. FWTB will use reasonable efforts to obtain best price and execution in respect of security transactions placed for the Account. FWTB shall not be responsible for any acts or omissions by any such broker provided that FWTB is not negligent in the selection of such broker.

Client reserves the authority to direct and to determine at any and all times the selection of any security for purchase and sale in their account; however, the exercise of this authority, with respect to one or more individual securities, shall not be construed as a revocation of the authority granted to FWTB provided for in this agreement.

4. **Overdrafts Prohibited**

Cash overdrafts in the Account will not be permitted. However, to the extent they do occur, FWTB, in its sole discretion, may permit funds to be advanced to the Account and charge the account additional fees for the amounts advanced for the length of time the overdraft exists. Client grants to FWTB a continuing security interest in the Account to secure the payment for any transactions effected for the Account and the repayment of any funds advanced to the account.

5. **Periodic Reports**

During the term of this Agreement, FWTB will provide statements of account no less than quarterly. Please contact your relationship manager within 60 days from the receipt of your initial statement if you have questions or concerns related to your statement or potential errors within your statement. In your correspondence, please provide the following information:

FWTB_0000415

**FIRSTWESTERN**
TRUST

- Account Name and Account Number.
- Your question or description of the potential error or transfer. Please explain why you believe there is an error within your statement or transfer information.
- The dollar amount and share amount (if applicable) related to the potential error.
- Supporting documents (if applicable).

You will receive a confirmation call once your request has been received. Your inquiry will be investigated within 48 hours of this call. If the investigation requires more than 10 days, we will contact you and determine a temporary resolution until the investigation is complete.

### 6. Investment Policy Statement/Performance Reporting

FWTB shall provide Client with an investment policy statement outlining the Client's investment strategy and goals ("Investment Policy Statement"), subsequent to the execution of this Agreement based on, among other things, information received from Client outlining their financial situation, goals and investment objective of their Managed Assets. The Investment Policy Statement shall become an addendum to this Agreement hereto, upon finalization of the investment strategy developed for the Client and execution of the Investment Policy Statement by the Client.

Within six weeks after the end of each calendar quarter, commencing with the first full calendar quarter after Client's delivery of the Managed Assets, FWTB will provide Client with its customized written report evaluating the performance of the Managed Assets in the format then generally used by FWTB.

### 7. Fees and Expenses

Client shall pay FWTB a fee for investment advisory services, custody and transaction services ("Portfolio Fee"). The Portfolio Fee shall begin accruing upon receipt of Client's Assets at FWTB. The Portfolio Fee shall be charged to the Client's account(s) each calendar quarter, or portion thereof, in arrears, based on a percentage of the average daily market value of the Client's Assets during the calendar quarter. Fees are calculated based on actual number of days within the year.

FWTB may direct client funds to be invested in shares or similar ownership interests of mutual funds, privately offered investment funds, managed accounts or other investment funds. In addition to the Portfolio Fee charged directly by FWTB, the client may also pay a direct asset management fee for separate account managers including managers affiliated with FWTB and an indirect asset management fee to each investment fund or mutual fund. The client should refer to the prospectus or offering document for further information. The Portfolio Fee will not be reduced by any internal fees including management fees of mutual funds, hedge funds or money market funds purchased for the account. These fees will be charged directly to the fund and are further described in the fund prospectus. In addition, the client may pay a commission to the executing broker, in the case of equity securities, which will be included in the total cost of the trade. Attached hereto as Exhibit A to this Agreement, is a list of FWTB's third party separate account managers ("Sub-Advisors") and its affiliated company's approved list of investment products ("Affiliated Company Products"), in effect at the time of execution of this Agreement, along with the respective management fees. Client should refer to FWTB's website for a current list at www.myfw.com, and log in to the secure portal, "iwealth Trust and Investment Management", Client should also refer the fund prospectus or offering documents for additional information related to fees and expenses.

By your signature below, you authorize and direct FWTB to obtain payment of the Portfolio Fee and/or asset management fee, directly from your account(s) held with FWTB, without any additional prior approval from you. FWTB will provide, at a minimum quarterly, a custodial statement to Client reporting the fee transaction.

The Portfolio Fee schedule, which is included in the Investment Policy Statement, may also include a minimum annual fee per relationship. FWTB shall notify the client in writing, of any changes to the fee schedule.

### 8. Standard of Care and Indemnification

FWTB shall give to the securities in its custody the same degree of care and protection which it gives to its own property. FWTB shall be under no duty to take or omit to take any action with respect to any assets held in this Account, except in accordance with

FIRSTWEST(*TB)
TRUST

the foregoing provisions. FWTB shall not be liable for any loss or depreciation (including, without limitation, any decrease in value of assets held in the account due to market activity) resulting from any action or inaction of FWTB taken in good faith pursuant to

the terms of this Agreement or as the result of following a direction or instruction from Client. Client agrees to indemnify and hold harmless FWTB, and FWTB's officers, employees and affiliates, from and against any loss, damage, and expense (including reasonable attorneys' fees) not directly resulting from a breach by FWTB of its standard of care or its willful misconduct. FWTB's right to indemnification under this Agreement will survive the termination of this Agreement for any reason.

9. Waiver of Liability for Negligence

In return for Client's acceptance of the authority granted to FWTB in this Agreement, Client agrees that neither FWTB nor its agents shall be liable for any act, omission, loss, depreciation, or error in judgment that may occur in connection with FWTB's handling of Client's account, except for such that may result from FWTB's gross negligence or willful misconduct. Client understands that nothing in this Agreement shall be construed as a waiver or limitation of any rights that Client may have under any applicable federal or state securities laws.

10. Termination

This Agreement may be terminated by either party upon written notice to the other. Notice of termination shall not affect transactions initiated or services performed prior to termination. Upon termination, FWTB shall deliver the assets in its custody as directed by Client or Client's legal successor. Upon receipt of notice of termination by FWTB, or Client, all accrued and uncollected fees will be charged to the Client's account(s), including reasonable costs associated with such termination.

11. Notices

Any notice required or permitted under this Agreement shall be effective three (3) business days after sent certified mail, return receipt requested, or one (1) day after deposit with a reputable overnight courier, to the other parties the address listed following their signature below.

12. Miscellaneous

a) Governing Law: This Agreement shall be governed by the laws of Colorado, without regard to any conflict of law provisions.

b) Entire Agreement, Successor: This Agreement represents the entire agreement between Client and FWTB, and except as provided in Section 7 with respect to fees, shall not be amended except in writing signed by both parties. Any designation of FWTB in this Agreement shall include its corporate successor. Any designation of Client will include its legal successor including the personal representative (executor) of a deceased individual Client.

c) Reliance on Instructions: FWTB is authorized to rely and act upon any verbal, written or electronic communication or instructions from Client that it reasonably believes to be genuine. FWTB is not responsible for the failure of any electronic media

d) Severability: The invalidity or unenforceability of any provision of this Agreement shall not affect or impair other provisions.

e) Binding Agreement: Client represents and warrants that all necessary action has been taken to authorize the execution of this Agreement and that this Agreement represents its legal and binding obligation.

f) Catastrophic Events: FWTB shall not be liable to Client to the extent FWTB's performance under this Agreement is delayed or prevented by events beyond FWTB's reasonable control, including, without limitation, revolution or other civil disorders; wars; acts of enemies; acts of terrorists; strikes; labor disputes; natural disasters; federal, state or municipal action; statute; ordinance or regulation.



FIRST WESTERN
TRUST

g)    **Privacy:** First Western is committed to maintaining the confidentiality, integrity and security of personal information about our current and prospective customers. We are confident of our privacy practices and want you to know how we protect this information and use it to service your account.

You do not have to contact us to benefit from First Western's privacy protections. They apply automatically to all of our customers and prospective customers. Please refer to First Western's enclosed Privacy Policy.

h)    Investments offered through First Western Trust Bank:
- Are not bank deposits;
- Are not FDIC insured;
- Are not guaranteed by nor obligations of FWTB or any of its affiliates; and
- Involve risk, including possible loss of the principal amount invested.

13.   **Special Provisions**

a)    **Money Market Funds:** FWTB applies its automated cash management system ("ACMS") to the cash balances maintained in the Account from time to time. Client understands and agrees that:

(i) Account Assets may be invested in First Western Trust Bank's institutional money market ("FWTB MM"). The FWTB MM is not a security as defined under the Securities Act of 1933 or 1934. Assets in the FWTB MM are considered deposits of the bank and are federally insured, guaranteed by the FDIC, up to the legal FDIC limits.

(ii) Account assets may also, from time to time, be invested in shares of BMO Funds and other money market funds ("Funds"); (iii) Funds held in the Account bear certain expenses and pay certain fees to investment advisors and other service providers; (iv) FWTB and its affiliates provide custodial, investment management, administrative, shareholder and other services to, and may receive fees from selective money market funds held in the Account; and (v) fees that may be received by FWTB and its affiliates and other Funds held in the Account are in addition to FWTB's fees for services under this Agreement. Money market fund shares are not deposits or obligations of, or endorsed or guaranteed by FWTB or any of its affiliates. Money market fund shares are not federally insured or guaranteed by the FDIC, the Federal Reserve Board, or any other government agency. Money market fund investments involve risk, including possible loss of principal.

b)    **Disclosure of Beneficial Ownership:** Pursuant to SEC Rule 14b-2, FWTB is required to provide certain beneficial ownership information to issuers of securities held in accounts. Client understands that, unless Client objects in writing below, FWTB will disclose the name and address of each beneficial owner of securities held in the Account by FWTB in nominee form to the issues of those securities.

☐ Do not disclose Client's name, address and the number of shares held in the Account in nominee name to the issuer of the securities.

c)    **Authorized Persons:** FWTB may rely on instructions or directions from any designated person or third party as directed by Client and certified in writing, or until notification by Client that such authorization has been revoked or modified. FWTB is authorized to rely and act upon instructions and directions received from the authorized persons in writing, verbally or by any electronic form of communication. All such instructions and directions that FWTB believes to be genuine shall be binding. FWTB is not responsible for the failure of any transmission of instructions by any electronic media.

*[This space left intentionally blank]*

FWTB_0000418



## Acknowledgements and Signatures

I, the undersigned Account Owner, hereby represent that I (we) have full power, authority and capacity to execute this Agreement. Client agrees to advise FWTB of any event, which might affect its authority, or the validity of this Agreement. I (we) also acknowledge that I (we) have received a copy of this Agreement for my (our) records.

**Client:**

Account Title: The Aaron H. Fleck Revocable Trust

Account Owner's Signature: *Barbara Fleck*

Print Name: BARBARA FLECK

Account Owner's Signature: *Aaron Fleck*

Print Name: AARON FLECK

Date: 5/8/18

**First Western Trust Bank Authorized Signature:**

By: *[signature]*

Print Name: Charles Bantis

Title: MP- Aspen

Date: 5/9/18

Address: 1900 16th St, Ste. 1200
Denver, CO. 80202
United States



# FIRST WESTERN TRUST

## Acknowledgements and Signatures

I, the undersigned Account Owner, hereby represent that I (we) have full power, authority and capacity to execute this Agreement. Client agrees to advise FWTB of any event, which might affect its authority, or the validity of this Agreement. I (we) also acknowledge that I (we) have received a copy of this Agreement for my (our) records.

Client:

Account Title: The Barbara G. Fleck Revocable Trust

Account Owner's Signature: *Barbara Fleck*

Print Name: BARBARA FLECK

Account Owner's Signature: *Aaron Fleck*

Print Name: AARON FLECK

Date: 5/8/18

First Western Trust Bank Authorized Signature:

By:

Print Name:

Title:

Date:

Address: 1900 16th St, Ste. 1200
Danver, CO, 80202
United States

FWTB-ND-08_2016

CONFIDENTIAL    FWTB_0005579