**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01073-CMA-GPG

THE AARON H. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck and Barbara G. Fleck,

THE BARBARA G. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck and Barbara G. Fleck,

AARON FLECK, and BARBARA G. FLECK, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FIRST WESTERN TRUST BANK,
CHARLES BANTIS, and
ANDREW GODFREY,

Defendants.

## DECLARATION OF AARON FLECK

I, Aaron Fleck, hereby submit the following Declaration:

1. I am a Plaintiff in this action in my capacity as Trustee of the Plaintiff Trusts.

2. I am fully competent to make this declaration and I have personal knowledge of the facts stated herein.

3. In 2018, I was arranging for the sale of my Aspen residence and I was looking for a corporate trust department to manage the proceeds of the sale.

4. I was approached by Defendant First Western Trust Bank ("Bank") about entrusting my assets to their trust department.

5. I met with them because I had known the branch president, Charles Bantis for many years when he was with a different banking institution.

6. The Bank represented to me that:

    a. Its local Wealth Management Advisor and Assistant Account Manager would be my contacts for communications about my investments;

    b. The Bank had a team which would be working on my investments, and they were the best financial planning minds in the business;

    c. The team would design my personal investment portfolio;

    d. The team would be available to me as an investment advisor to my Trusts;

    e. The portfolio would be constructed to balance income and equity;

    f. An annual income return of $400,000 - $500,000 was reasonably ascertainable;

    g. Over time an overall return of 6.2% was reasonably ascertainable;

    h. The Bank would function as our fiduciaries;

    i. The Bank featured strong communications with the trust department clients and was responsive to their needs and their questions about their portfolio.

7. These representations were important to me and crucial to my decision to invest my funds with its trust department.

8. I later learned that the representations made to me were untrue.

9. I learned that:

    a. The Wealth Management Advisor did not advise anyone about wealth, or anything else for that matter. The Wealth Management Advisor's responsibility was solely to develop business for the Bank;

2

b. The Assistant Account Manager had nothing to do with the investments made by the Bank's trust department, or evaluating the performance of the trust department;

c. There was no team making decisions about the investments of the Fleck's portfolio, there was just one Account Manager;

d. Only the Account Manager assembled the portfolio for the Fleck Trusts;

e. No one functioned as an investment advisor to the Fleck Trusts;

f. Instead, an investment committee dictated available funds that an account manager could select for investment of the Plaintiffs' assets;

g. The Account Manager met with me only once between May and December, 2018;

h. The Bank's idea of fiduciary obligations was that the customer's interests were put first, unless, of course, they conflicted with the Bank's interests.

i. The targeted returns of 400,000 – 500,000 per year of income represented income returns of 5% to 6.25% of total funds under management, and in 2018 were unattainable in a balanced portfolio with conservative or moderate risk.

10. The Bank failed to disclose to me that:

a. It had no cohesive and comprehensive investment strategy.

b. Its team approach consisted only of the pre-approval of a series of investments which were available to the Account Manager.

c. The investments were selected individually by the Account Manager without consultation with me.

  d. It had no established means of effective communication with Trust department clients.

  e. The account manager was not responsible to the Chief Investment Officer.

  f. Its Wealth Management Advisor was unqualified and provided no wealth management advice.

  g. Plaintiffs' local contacts had no authority over the trust accounts and the Assistant Account Manager was performing ministerial functions only.

11. I relied upon the representations and omissions of the Bank.

12. If I had known the truth about the Bank's representations and omissions, I would not have entrusted the assets of the Trusts to the Bank to manage.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2023, at: __Aspen__, Colorado.

By: _/s/ Aaron Fleck_
Aaron Fleck