**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action Number: 21-cv-01073-CMA-CPG

THE AARON H. FLECK REVOCABLE TRUST, through its Trustees, Aaron H. Fleck and Barbara G. Fleck, et. al.

      Plaintiffs,

v.

FIRST WESTERN TRUST BANK, et. al.

      Defendants.

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**

The Flecks' Response is heavy on allegations and thin on evidence. But "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations;" it must "set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). Plaintiffs failed to submit evidence sufficient to establish a triable claim for fraud, fraudulent concealment, breach of fiduciary duty, or breach of contract based on the fees charged. As such, the Court should enter judgment dismissing these claims, which would narrow the issues at trial to whether First Western Trust Bank ("FWTB") breached the three governing contracts: the Investment Policy Statement ("IPS"), the Investment Services and Custody Agreement ("Investment Agreement"), and the Fee Schedule Agreement ("Fee Agreement").

## REPLY CONCERNING UNDISPUTED FACTS

Plaintiffs admit many facts are undisputed, including what communications occurred before the Flecks hired FWTB as an investment manager, Mot. at Statement of Undisputed Facts ("SUF") ¶¶ 1-7, 32, 36-39, the contracts entered and their terms, SUF ¶¶ 15-27, 43-50, and the dates when FWTB and the Flecks met to discuss the investment accounts, SUF ¶ 40. These facts alone warrant partial summary judgment.

## REPLY CONCERNING DISPUTED FACTS[1]

8.   Plaintiffs' response does not conflict with SUF #8, or refute any argument in

---

[1] Defendants will not respond to and the Court need not consider the allegations in Plaintiffs' introduction because they are not supported by record citations. *See* F.R.C.P. 56(e) ("If a party fails to properly support an assertion of fact … the court may … grant summary judgment"); Uniform Civ. Prac. Standard 7.1D(b)(5) ("If the party opposing the motion believes that there are additional disputed questions of fact … the party shall, in a separate section of the brief styled 'Statement of Additional Disputed Facts,' … set forth … each additional, material disputed fact that undercuts the movant's claim that it is entitled to judgment as a matter of law … ***accompanied by a specific reference to material in the record***") (emphasis added).

- 1 -

Defendants' motion for partial summary judgment.

9. Plaintiffs admit FWTB told Aaron Fleck that Plaintiffs' portfolio manager would be Doug Barker in Denver, and provide no evidence to contradict the testimony from multiple witnesses that FWTB also told Mr. Fleck that Mr. Barker would select strategies and funds approved by FWTB's Investment Policy Committee.

10. For purposes of summary judgment, it does not matter that Mr. Fleck disputes if he provided input to the IPS because he indisputably signed it.

12. Mr. Fleck was asked in his deposition why he hired FWTB and he testified he did so because he promised Charlie Bantis he would after Mr. Bantis quickly approved his bridge loan. Mot., SUF ¶ 12, Ex. 1. Mr. Fleck's self-serving declaration submitted in response to Defendants' motion is conclusory, unsupported by corroborating evidence, and contradicted by his deposition testimony, in which he made clear that he did not hire FWTB because of its advertised qualifications or investment approach:

> [Q] So you chose First Western to manage the trusts assets in 2018 over four or five other banks; is that right?
>
> A  Because I gave them my word and I've lived up to my word my whole life. … I gave them an opportunity, my son-in-law and daughter said, do not invest with them. They are not capable. I said, I gave them my word. […]
>
> Q  Had you have read this Investment Policy Statement, would you have still signed it?
>
> A  Probably not. … I trusted them and I was trying to live up to my word by rewarding them with something because I do not know their position in town, but I said, you did do something good for me, I'll do something good for you.

Mot., Ex. 1, Fleck Dep. At 107:7-15, 126:24-127:8.

13. It does not matter if Mr. Fleck had an objection to the IPS when he signed

it because it is undisputed that Plaintiffs agreed to the IPS and are bound by its terms.

14. It is undisputed that the IPS states that it was "jointly developed." Mr. Fleck's statement that he would give FWTB "six months" as a trial period shows he understood FWTB's planned strategy and was willing to try it, at least in the short-term.

28-29. It is undisputed that Mr. Fleck did not read the Investment Agreement and the Fee Agreement, and has no recollection of reading the IPS. Ex. 1, A. Fleck. Dep. at 116:5-117:1, 126:24-127:1, 132:24-133:10, 147:9-12.

31-33. Plaintiffs agree that Mr. Fleck does not recall, one way or the other, if Defendants told him FWTB employed professional money managers, and does not know, one way or the other, if FWTB did employ professional money managers.

34-35. Plaintiffs cite no evidence when denying these facts. It is undisputed that Mr. Barker had to select from the funds and strategies approved by FWTB's Investment Policy Committee. *See* SUF ¶ 9 (citing testimony of three witnesses).

40. The number and dates of meetings that occurred is undisputed.

42. The fact that Citigroup received the $800,000 is undisputed because it was established by John Sawyer's declaration and Mr. Fleck's testimony that "Citicorp says they never got it," Mot., Ex. 1 at 168:12-13, is inadmissible hearsay. *See* C.R.E. 801, 802.

**ARGUMENT**

I. **THE UNDISPUTED EVIDENCE SHOWS PLAINTFFS WERE NOT FRAUDULENTLY INDUCED INTO PROVIDING FUNDS TO FWTB TO INVEST.**

Defendants established that the alleged misrepresentations in the Amended Complaint—*i.e*., FWTB employs professional money managers and analysts and is a registered investment advisor—are either true or were never made. *See* Mot. at 12-14.

Unable to refute this, Plaintiffs shift their claim to focus on other alleged misrepresentations. But Plaintiffs fail to establish a triable fraud claim for any misrepresentation.

Plaintiffs point to the two advertisements, which are similar to quotes contained on FWTB's website. Resp. Br. at 8 (citing Am. Compl. ¶¶ 27-28).[2] The undisputed evidence shows that these statements are true and/or are unactionable opinions. It is indisputably true that FWTB did "have a team, not just one person" working on investment management. *See* SUF ¶ 35 (FWTB had approximately eight analysts and investment professionals who contributed to management of the Flecks' portfolio); Ex. 5, Sawyer Decl. ¶ 10 (explaining the role of each team member). It also is indisputably true that FWTB did "serve as an investment advisor," as that is what FWTB did for the Flecks by investing $8 million of their assets for approximately one year. *See* SUF ¶¶ 13, 41-42. FWTB just is not a "***registered*** investment advisor" (because banks are exempt from registration requirements in the Investment Advisers Act of 1940), but it never claimed to be one. *See* SUF ¶¶ 36-40.

FWTB's statement that its clients will gain access to "the best financial planning minds in the business" is an unactionable statement of opinion, not a statement of fact on which a fraud claim could be premised. *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir. 2009) (slogan "You concentrate on your dream. We'll take care of everything else" "cannot trigger liability because it amounts to mere puffery," *i.e.*, "vague generalities that no reasonable person would rely on as assertions of particular facts"); *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 Fed. App'x 778, 786 (10th Cir. 2016)

---

[2] *Available at* https://myfw.com/services/#:~:text=At%20First%20Western%20Trust%2C%20we,out%20the%20lifestyle%20you%20desire and https://myfw.com/investment-management/.

(advertisement that defendant provides the "best medical practices" and "best possible care" were not actionable because they were "sales puffery," not statements of fact).

Moreover, Plaintiffs have not shown a triable issue of fact that they relied on these statements (or any other alleged misrepresentation). Plaintiffs provide no evidence that the Flecks ever read these statements or reviewed FWTB's website. Mr. Fleck did not even claim to have done so in his self-serving declaration. Mr. Fleck already testified that he chose FWTB over competing investment managers because he promised Charlie Bantis he would after Mr. Bantis approved his bridge loan, not because he was impressed with FWTB or its approach. SUF ¶ 12, Ex. 1, Fleck Dep. At 101:9-102:5, 107:7-15, 126:24-127:8. Mr. Fleck also testified that he told FWTB that he would only give them a six-month trial run, given his doubts about their diversified investment strategy. *See* Resp. Br. at 5.

Mr. Fleck's declaration does not create a genuine dispute of any material fact with respect to reliance or any other element of fraud. Mr. Fleck's declaration contains conclusory statements of what was represented to him, without any corroborating evidence or identification of when the statements were made to him or by whom. Mr. Fleck's new story of why he chose FWTB contradicts his deposition testimony, yet Mr. Fleck provides no explanation for his change in position. He does not claim confusion, and he did not make changes to his deposition testimony after being provided the transcript. *See* F.R.C.P. 30(e). "Unsubstantiated and self-serving testimony in an affidavit that contradicts earlier deposition testimony is simply not sufficient under Rule 56(e) to create a genuine issue of material fact and defeat an otherwise supported motion for summary judgment where there is no other corroborating evidence in the record." *Bernard v. Grp. Pub., Inc.*, 970 F. Supp.

2d 1206, 1213 (D. Colo. 2013) (quotation omitted); *see also Front Range Solutions USA, Inc. v. Newroad Software, Inc.*, 505 F. Supp. 2d. 821, 829-830 (D. Colo. 2007) (self-serving affidavits did not create genuine issue of fact because they were contradicted by deposition testimony and not corroborated by documentary evidence).

Plaintiffs also argue that Defendants misrepresented Andrew Godfrey, John Sawyer, and other team members' roles with respect to managing the Trusts' investments. Resp. Br. at 9-11. As an initial matter, this claim is not pleaded by Plaintiffs and therefore cannot be a ground to deny summary judgment. *See* Am. Compl. ¶¶ 85-95; *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1173 (D. Colo. 2015) (granting summary judgment because the plaintiff did "not come forward with evidence to support the fraud claim as it is alleged in the Amended Complaint," and did not amend its complaint to change fraud theories). Regardless, Plaintiffs do not identify any misrepresentation made to them about Mr. Godfrey, Mr. Sawyer, or anyone else's role at FWTB. The record establishes that Mr. Fleck knew Doug Barker in Denver was the Trusts' portfolio manager, and Mr. Godfrey was a local contact in Aspen. SUF ¶ 9; Resp. Br. at 4 ("Mr. Fleck did learn that Doug Barker would be the portfolio manager…").[3]

Ultimately, Plaintiffs' fraud claim fails because Plaintiffs have not shown any representation was made to them by Defendants for which there is a genuine dispute of fact as to falsity or reliance, both of which are required elements of the claim. Mot. at 7.

---

[3] Plaintiffs argue they did not receive a "personalized portfolio" or quarterly custodial statements as required by the IPS. Resp. Br. at 9-10. These are breach of contract claims that can be resolved at trial. Plaintiffs did not plead these claims as fraud claims and have not explained or provided evidence sufficient to proceed on them as fraud claims. In any event, they are not viable as fraud claims because they turn on whether FWTB complied with contractual duties. *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 289 (Colo. App. 2009) (economic loss rule barred fraud claims "based on post-contractual conduct").

## II. THE UNDISPUTED EVIDENCE SHOWS NO FRAUDULENT CONCEALMENT OCCURRED.

Defendants established that Plaintiffs' fraudulent concealment claim fails because Defendants did sufficiently disclose FWTB's investment approach and credentials, during meetings and in the IPS and the Investment Agreement. *See* Mot. at 14-16.

Unable to defend their fraudulent concealment claim as pleaded, Plaintiffs again shift gears and argue that Defendants failed to disclose "what it meant by its fiduciary duties." Resp. Br. at 11. But, again, Plaintiffs' new claim is invalid because it was not pleaded in the Amended Complaint. *See L-3 Commc'ns*, 125 F. Supp. 3d at 1173 (fraud claim must be pleaded to proceed past summary judgment to trial).

On the merits, the claim also fails. Plaintiffs do not explain or provide evidence to show why FWTB had a duty to disclose the meaning of fiduciary, that Plaintiffs were misled about the meaning of fiduciary, or that Plaintiffs' investment decision was based on some misapprehension about the meaning of fiduciary, all of which are required elements of the claim. *See* Mot. at 14. Moreover, the IPS and the Investment Agreement set forth in detail the duties FWTB owed to Plaintiffs, and how FWTB would manage the Trusts' assets. Plaintiffs cannot claim they were ignorant of facts disclosed in the governing contracts that they did not bother to read. *See* Mot. at 15-16 (citing two cases).

Charlie Bantis's deposition testimony, which is cited by Plaintiffs, does not create a triable issue of fact. Resp. Br. at 11. Mr. Bantis never discussed the meaning of fiduciary duties with Plaintiffs. He was asked to define fiduciary duties in his deposition, and he stated "being a fiduciary means placing the client's interest first … unless it potentially could be detrimental to the institution." Resp. Br., Ex. C at 69:24-70:9. Mr. Bantis also

testified that: he has no expertise in fiduciary duties; he is not responsible for managing investment accounts; he was referring to a client that told FWTB to break the law, for example, by falsifying records, in which case FWTB could not service the client; and FWTB and Plaintiffs' interests were not in conflict. Ex. 14, Bantis Dep. at 156:19-161:3.

### III. PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED BECAUSE THE UNDISPUTED EVIDENCE SHOWS THE PARTIES' THREE CONTRACTS GOVERN ALL TRIABLE ISSUES.

Plaintiffs' claim for breach of fiduciary duty is barred by Colorado's economic loss rule because the breaches Plaintiffs allege are subsumed by FWTB's contractual duties in the IPS, the Investment Agreement, and the Fee Agreement. *See* Mot. at 16-19.

Plaintiffs argue that FWTB's fiduciary duties of honesty, loyalty, good faith and allegiance arise from common law. *See* Resp. Br. at 13-14. This is beside the point. Even if common law duties exist, the economic loss rule applies when such duties are subsumed by specific contractual language. *See Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (economic loss rule applies if the common law duty allegedly breached is "also imposed by the contract."); *Owens v. Nationstar Mortg. LLC*, No. 14-cv-01434-PAB-KLM, 2015 WL 1345536, at *2 (D. Colo. Mar. 23, 2015).

Plaintiffs argue that the only affirmative duty in the contracts is for Plaintiffs to "give the securities in its custody the same degree and protection which it gives its own property." Resp. Br. at 16. That is incorrect. In their motion, Defendants showed that each alleged breach of fiduciary duty—including, if FWTB used a cohesive investment strategy, charged undisclosed fees, and failed to follow Mr. Fleck's alleged instruction to harvest tax losses—

turns on specific language in the parties' contracts. Mot. at 16-19.[4] This is also true for the alleged breaches of fiduciary duty Plaintiffs raise in their Response.

In particular, Plaintiffs claim that poor account performance is explained by an investment structure that resulted in ineffective communication, and failure to follow the client's instructions and investment philosophy. *See* Resp. Br. at 15. But the validity of these allegations must be evaluated in light of the parties' contracts. In the Investment Agreement, Plaintiffs granted FWTB "full and complete discretion and authority with respect to managing the investment of [the Flecks'] assets," while reserving the right "to direct … the selection of any security for purchase and sale." Mot., Ex. 8, Investment Agreement § 8. In the Investment Agreement and the IPS, FWTB agreed to deliver account statements "at least quarterly" and to review the investment approach "periodically" as conditions changed. *Id.* § 5; Mot., Ex. 7, IPS § IX.  The IPS also requires FWTB to manage the Trusts' accounts with "long-term adherence to an agreed upon investment program that will include various asset classes, styles, and acceptable ranges," and that the account be invested "to reach the target allocation" and "monitored for adherence to [the] IPS." Mot., Ex. 7, IPS at 2, 6. The fact finder must determine if FWTB is liable for poor communication and failure to follow Mr. Fleck's alleged instructions based on these provisions, not general common law concepts; otherwise, the parties' contractual bargain and risk allocation will be negated.

Plaintiffs' attempt to distinguish *Mid-Century Insurance Co. v. Hive Construction*,

---

[4] Defendants maintain that the affirmative standard of care in Section 8 of the Investment Agreement, combined with the exculpatory language in Section 9 of the Investment Agreement which permits liability for gross negligence and willful misconduct, subsumes any common law duties of honesty, loyalty, good faith, and allegiance. However, the Court need not rule on these provisions alone because each of the alleged breaches turns on more specific contractual language addressing the conduct in question.

2023 COA 25, is unavailing. Plaintiffs argue that *Mid-Century* was about "the failure to follow material specifications in the contract." Resp. Br. at 14. But that is what the Court found, not what the plaintiff in *Mid-Century* argued. The plaintiff argued the case was about a general contractor's breach of a "common law tort duty" by failing to perform work "in a safe, careful, competent and workmanlike manner" because it installed combustible plywood in the kitchen wall. 2023 COA 25 ¶¶ 7, 32. The Court of Appeals, however, held that any common law duty was "the same duty [defendant] owed under the contract" since the contract required the defendant to perform its work in conformity with the contract, and the contract specified two layers of drywall. *Id.* ¶¶ 32-33. As in *Mid-Century*, FWTB was required to perform its duties to Plaintiffs in conformance with the contracts, and the liability turns on if FWTB complied with its duties detailed in the contracts.

## IV.  THE COURT SHOULD DISMISS ANY CLAIM FOR LIABILITY BASED ON THE FEES FWTB CHARGED.

Plaintiffs do not dispute that FWTB disclosed all fees it charged in contracts Plaintiffs signed. Resp. Br. at 16-17. And while Plaintiffs ask to seek disgorgement of fees as a *remedy*, their Amended Complaint alleges that FWTB is *liable* for breach of contract and fiduciary duty because FWTB generated excessive fees through unnecessary transactions. Am. Compl. ¶¶ 114, 27-128. The record establishes this did not occur, as FWTB's fees were based on the amount of assets managed, not transaction volume. SUF ¶¶ 45-50; Mot. Ex. 5, Sawyer Decl. ¶ 9(e). Because Plaintiffs do not dispute this, Resp. Br. at 7, the Court should find that Defendants are not *liable* as a result of the fees they charged.

## **CONCLUSION**

For these reasons, the Court should grant the motion for partial summary judgment.

Dated: July 10, 2023

/s/ Adam B. Stern
BRYAN CAVE LEIGHTON PAISNER LLP
Timothy R. Beyer
Adam B. Stern
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Telephone: (303) 861-7000
tim.beyer@bclplaw.com
adam.stern@bclplaw.com

Attorneys for Defendants First Western Bank, Charles Bantis, and Andrew Godfrey

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of July, 2023 a true and correct copy of **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed and served using the CM/ECF system, on the following:

PODOLL & PODOLL, P.C.
Richard B. Podoll
rich@podoll.net
Robert Kitsmiller
bob@podoll.net
Jacqueline E. Hill
jacqui@podoll.net

*Attorney for Plaintiffs*

/s/ Adam B. Stern
Adam B. Stern